JUAN SILVA TORO, demandante y apelante, *v.* LA SUCESIÓN LEGÍTIMA DE DON CELESTINO CARATINI ZAYAS, integrada por sus hijos legítimos MARÍA LUISA, LUIS FERNANDO, JAIME FRANCISCO, SARAH MARÍA DEL CARMEN Y CONCEPCIÓN ARMIDA CARATINI Y BAS, demandada y apelada.

Núm. 7159.—*Sometido:* Marzo 11, 1937. *Resuelto:* Junio 18, 1937.

*R. Atiles Moréu* y *A. de Jesús Matos,* abogados del apelante; *Agustín E. Font,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Se trata de un caso sobre cobro de lo indebido. En la demanda se alegan dos causas de acción.

La primera se funda en que siendo dueño el demandante de una fábrica de hielo y deseando moverla por fuerza eléctrica se disponía a celebrar un contrato con el Negociado de Utilización de Fuentes Fluviales del Gobierno Insular cuando intervino don Celestino Caratini, causante de los demanda-

dos, quien alegando que era poseedor de una franquicia exclusiva para la venta de energía eléctrica y alumbrado en Coamo, expresó al demandante que el contrato que intentaba celebrar no podía llevarse a efecto sin su consentimiento exigiendo para prestarlo la suma de veinte dólares mensuales, y que creyendo el demandante que ello era así se avino a la exigencia llegando a satisfacerle setenta y dos mensualidades; que lo cierto era que durante todo ese tiempo Caratini no poseía franquicia alguna que lo autorizara a vender la fuerza eléctrica que consumía el demandante, ni a exigir sobreprecio alguno, careciendo el contrato celebrado de causa o consideración.

El hecho segundo de la segunda causa de acción, copiado textualmente, es como sigue:

"Que luego de fallecido don Celestino Caratini, la sucesión demandada, alegando ser cesionaria del supuesto contrato expuesto en la primera causa de acción, cobró al actor la suma de $20, por el mes de febrero de 1933, careciendo de autoridad para ello, y sin que mediara causa o consideración alguna para exigir dicho pago, al que fué inducido el actor bajo la falsa representación hecha por el causante de los demandados en la incepción del alegado contrato en el mes de octubre de 1926."

Se pide una sentencia que contenga los siguientes pronunciamientos:

"(a) Don Celestino Caratini cobró indebidamente, y el actor pagó indebidamente al mismo, la suma de $1,440.

"(b) La Sucesión de don Celestino Caratini cobró indebidamente y el actor pagó indebidamente a la misma, la suma de $20, y dicha sucesión ha heredado a su vez, de su causante don Celestino Caratini, la obligación de repetir y de reintegrar al actor la suma de $1,440, más la suma de $20 cobrada por ella, que viene obligada a pagar directamente."

La Sucesión demandada opuso a la demanda la excepción previa de falta de hechos determinantes de una buena causa de acción. Discutida, fué desestimada. Contestó entonces negando total y específicamente todos los hechos de la de-

manda. Fué el pleito a juicio. Practicaron su prueba ambas partes y la corte en mayo 25, 1935, dictó sentencia declarando la demanda sin lugar, sin especial condenación de costas.

En la relación del caso y opinión que sirve de base a su sentencia, apreció la corte la evidencia presentada como demostrativa de que "el demandante Juan Silva Toro allá para el año 1926 tenía en Coamo una planta de hielo que funcionaba con petróleo, y deseando instalar un motor eléctrico de quince caballos de fuerza para sustituir el de petróleo, convino con don Celestino Caratini, causante de los demandados, que tenía concedida una franquicia (originalmente concedida a Don Ramón Gandía Córdova) por El Pueblo de Puerto Rico para la venta de energía y luz eléctrica en Coamo, en que el Sr. Caratini obtuviera del Servicio del Riego de Carite la instalación de dicho motor; que el Sr. Caratini efectuó un contrato con dicho Servicio de Riego para la instalación de dicho motor para la planta de hielo (Ex. 10 demandante) apareciendo éste como de la propiedad de Caratini; que el demandante pagó $300 por la instalación de la línea de trasmisión hasta la planta de hielo y además el importe del consumo mensual de fuerza eléctrica, más $20 mensuales para el Sr. Caratini por haber consentido éste en la invasión del territorio de Coamo, que según su teoría era exclusivo bajo los términos de la franquicia que tenía; que el demandante hacía los pagos mensuales al Sr. Caratini y éste al Servicio de Riego; que estos pagos se hicieron desde el mes de noviembre de 1926 hasta enero de 1933, habiéndose hecho el último pago a la Sucn. demandada por haber fallecido el Sr. Caratini; que enterado el demandante que el Sr. Caratini no tenía tal exclusividad para el territorio de Coamo, hizo un contrato directo con el Servicio del Riego en el mes de marzo de 1933 para su planta de hielo."

Refiere entonces la corte que la jurisprudencia de este Tribunal Supremo sostiene que el que paga lo indebido tiene acción para pedir la devolución de lo pagado cuando el error

es de hecho, mas no así cuando lo es de derecho y cita los casos de *Arandes* v. *Báez,* 20 D.P.R. 388; *American R. R. Co.* v. *Walkers,* 22 D.P.R. 283; *Sucesión Marín* v. *Municipio de Arecibo,* 28 D.P.R. 515.

Transcribe párrafos salientes de las opiniones emitidas en dos de los casos citados y refiriéndose al último de ellos— el de la *Sucesión Marín* v. *El Municipio de Arecibo*—dice:

"Consideramos que los hechos en el caso que acabamos de citar son muy similares a los del caso de autos. El hecho de si la franquicia que tenía el Sr. Caratini era exclusiva para el territorio de Coamo o no, y si tenía derecho a cobrarle al demandante los $20 mensuales a virtud de dicha franquicia, o por su intervención en el negocio, no es una cuestión de hecho a resolver sino de derecho. Como en el caso de la Sucesión Marín, en éste, el demandante tenía conocimiento del hecho que originó los pagos y el conocimiento posterior que tuvo de que dichos pagos no eran necesarios o eran improcedentes por carecer el Sr. Caratini primero, y los demandados, después, de derecho al cobro, no puede estimarse como error de hecho sino de derecho. De manera, pues, que resolvemos que de acuerdo con el artículo 1795 del Código Civil, el demandante no ha probado que tenga derecho a la reclamación que hace."

Y luego agrega:

"En cuanto a la teoría de que el caso pueda caer bajo los preceptos del artículo 1227 del Código Civil, la Corte es de opinión que no se ha probado que el contrato celebrado entre el demandante y el causante de los demandados fuera uno sin causa o con causa ilícita, tomando en consideración que el Sr. Caratini, causante de la Sucesión demandada, hizo el contrato a su propio nombre con el Servicio del Riego, asumiendo, por lo tanto, él directamente la responsabilidad con dicho Servicio; que el demandante derivó beneficios variando el sistema de energía con que funcionaba la fábrica de hielo; que el Sr. Caratini había sufragado parte de los gastos para la instalación de la línea establecida que suministraba la energía eléctrica a la Planta, ya que dicha energía era tomada de la línea que anteriormente había construído el Riego y don Celestino Caratini, y, por último, el hecho de que el Sr. Caratini era responsable directamente al Riego del pago mensual de la energía que utilizaba la planta de hielo. No puede decirse que en un contrato de esta naturaleza no haya habido causa o que la misma haya sido ilícita."

No conforme el demandante apeló. Señala en su alegato la comisión de dos errores cometidos a su juicio por la corte al resolver que se trata de un error de derecho y no de hecho y al decidir que hubo consideración para la celebración del contrato siendo lícita su causa.

██ Para fijar bien nuestro criterio veamos cómo surgen los hechos de la prueba.

El primer testigo que declaró fué el propio demandante. Dijo que desde hacía muchos años tenía en explotación una planta de hielo movida hasta el de 1926 por petróleo. Entonces, copiando textualmente de su declaración "pensé montar un motor eléctrico y lo había dicho a algunas personas. Yo pensé dar los pasos, pero una tarde allá en los primeros días del mes de mayo, se presentó el Sr. Caratini, fallecido ya, y me preguntó si era cierto que yo me disponía a montar un motor eléctrico, y yo le dije que sí. Entonces me dijo, pues si usted piensa montar un motor eléctrico, tiene que hacerlo por mi conducto. Bien, yo le dije, pues para mí es igual, y él me dijo, pues entonces yo voy a solicitar del Riego que le mande un experto aquí y le dije, tampoco tengo inconveniente. Días después vino un señor del Riego e hizo números. Yo tenía que pagar $156.25 mensualmente. Además venía obligado a pagar parte de la instalación. Trescientos pesos por los alambres, los postes, los transformadores. La instalación fué hecha por el Gobierno. La cogieron de la parte atrás, de donde ellos la toman para el alumbrado. No fué derivada de la planta de distribución del Sr. Caratini. Los postes sobre los cuales habían tendido los alambres que conducían la fuerza para mi planta de hielo los pusimos el Gobierno y yo. Absolutamente en nada intervino el Sr. Caratini. Una vez estuvo el motor eléctrico montado y la línea tendida, yo esperaba que me dieran corriente y los días pasaron y pasaban los meses y no llegaba la corriente. Entonces un día pasaba el Sr. Caratini y le pregunté por qué no se me daba la corriente. "Ah, por que si usted no me paga a mí porque yo le permita al Riego que le dé corriente, usted no la recibirá."

Yo, desde luego, como siempre había creído en la generosidad del Sr. Caratini, había tratado otras veces con él y siempre lo había considerado un caballero igual, no tuve duda en que él me decía la verdad, y entonces me avine a pagar veinte pesos mensuales, que fué lo que él me exigió para que el Riego me diera corriente. Esos veinte pesos fueron en adición a los $156.25 importe del costo del servicio de fuerza. Eran para el Sr. Caratini. Él alegaba que no podía de ninguna manera el Riego darme corriente si él no le daba permiso al Riego. Estuve pagando el sobreprecio setenta y dos meses ascendiendo a $1,440 lo pagado. Terminó porque un día, hablando con una persona versada en esos asuntos de franquicia y demás me informó que el Sr. Caratini no podía cobrarme nada, puesto que ese servicio lo prestaba el Riego directamente; e inmediatamente yo pagué el último recibo del mes de diciembre, del 32, y al llegar el de febrero no lo mandé; mandé solamente el cheque del Riego; pero no mandé el del Sr. Caratini, a lo cual no preguntaron por qué no lo mandaba ni nada, absolutamente. Entonces, vista la actitud de ellos, de que no me cobraban ni mucho menos, pude cerciorarme de que en realidad a mí se me había cobrado un dinero indebidamente y héme aquí reclamando ese dinero pagado indebidamente.''

Esa es la versión del demandante. La de la parte demandada la ofrece Jaime Francisco Caratini, hijo de don Celestino, quien declaró que ''a principios del año 26 se presentó el Sr. Silva a solicitar corriente eléctrica de la planta eléctrica de Coamo, que pertenecía a mi papá, y papá le dijo que tenía que escribir al Riego solicitando el permiso porque no tenía fuerza suficiente para un motor de quince caballos, eléctrico; que después que papá escribió al Riego y tuvo contestación de él, convinieron en que papá haría un contrato con el Servicio de Riego, a nombre de él y que el Sr. Silva pagaría el mismo precio de la corriente que le pasara el Riego, y que el Sr. Silva le pagaría a papá $20 por el derecho que tenía él a utilizar la fuerza y por el compromiso que te-

nía él con el Riego de pagarle, si el Sr. Silva no pagase la cantidad. Cuando ocurría alguna interrupción el Sr. Silva llamaba por teléfono a casa y nosotros llamábamos a Santa Isabel y el Riego venía a hacer el servicio. El Sr. Silva estuvo pagando desde que se inició el contrato hasta un mes antes de morir papá. Que recuerda que su papá le dijo que. él consentiría en que se invadiera su territorio si él le daba esos veinte pesos.''

Demuestra la prueba que en efecto el Sr. Caratini era dueño de una franquicia obtenida por don Ramón Gandía Córdova para construir y operar una planta eléctrica en Coamo en relación con el Servicio Hidroeléctrico del Gobierno Insular, y que en efecto estaba operando dicha planta cuando ocurrieron los hechos a que se refieren las declaraciones de los Sres. Silva y Caratini, y demuestra además la prueba que a virtud de un contrato independiente con dicho servicio hidroeléctrico del Gobierno Insular obtuvo el Sr. Caratini el suministro de fuerza eléctrica para la planta de hielo del Sr. Silva, enviando el Sr. Silva al Sr. Caratini mensualmente dos cheques, uno para el pago al Gobierno que Caratini trasmitía a su destino y otro de $20 para él. Parece conveniente transcribir la siguiente carta del Sr. Caratini al Sr. Silva que figura en los autos. Dice:

''C. Caratini—Agricultor—Box 114—Coamo, P. R.—Enero 21, 1927.—Sr. Don Juan Silva—Pte.—Estimado amigo: Tengo el gusto de adjuntarle el Recibo del Riego debidamente pagado con su cheque que me envió para este fin. A la vez va el mío por lo que me corresponde del mes de diciembre.—Gracias por todo y quedo de Ud.— Atentamente suyo—SS.—(F) Celestino Caratini.''

Y uno de los recibos de Caratini de los veinte dólares que es como sigue:

''RECEIVED from Juan Silva Veinte pesos—dollars—Por la corriente consumida la Planta de Hielo según recibos del Riego de 20 a 20 del mes en curso.—Coamo, diciembre 31, 1926—$20.00—(F.) Celestino Caratini.''

¿Tenía Caratini derecho a cobrar esos veinte dólares mensuales? De acuerdo con la franquicia no lo tenía. Ello es claro, pero hay una declaración en los autos, la del Sr. Luchetti, ingeniero jefe del Servicio de Riego del Gobierno Insular, que precisa examinar a los efectos de aquilatar la conducta de Caratini. Dicha declaración es larga y difícil de resumir. Sostiene en resumen, a nuestro juicio, que la política del Gobierno hasta 1927 había sido la de dejar a los concesionarios de franquicias como la del Sr. Caratini el suministro de cualquier cantidad de fuerza en la zona urbana. Después de esa fecha los contratos por más de tres caballos de fuerza debían celebrarse directamente con el Gobierno Insular.

Siendo ello así y habiéndose celebrado la transacción entre Caratini y Silva en 1926, lo dicho por Luchetti favorece a Caratini en cuanto a que la política del Gobierno en 1926 estaba en armonía con las representaciones que hiciera a Silva en el dicho año. Ya dejamos expresado que la franquicia en sí misma no favorecía a Caratini. Por sus términos no tenía derecho Caratini a impedir que en un caso como el del Sr. Silva la transacción se verificara directamente entre el Gobierno y la persona interesada. Y que ello era así lo demuestra el propio contrato independiente celebrado por Caratini con el Gobierno para servir a Silva.

Ahora bien, bajo esas condiciones ¿puede concluirse que Caratini hizo una falsa representación a Silva cuando se inició la transacción? La duda surge pero creemos en verdad que no puede llegarse a conclusión tan grave. Si el propio Gobierno seguía la política descrita por el Sr. Luchetti, nada tiene de extraño que el Sr. Caratini se aprovechara de ella. Tampoco puede excluirse la posibilidad de que interpretando de buena fe su franquicia creyera Caratini que el derecho estaba de su parte.

Sobre esta primera etapa de la transacción, bajo las circunstancias que dejamos expuestas, el error cometido debe concluirse, a nuestro juicio, que fué de derecho, no pudiendo en tal virtud el demandante reclamar lo que pagara de

acuerdo con la jurisprudencia de esta propia Corte Suprema que citó el juez de distrito para fundar su sentencia.

 Ahora bien ¿debe entenderse que la situación continuó siendo la misma a partir de 1927 cuando el Gobierno según declara el propio Sr. Luchetti hizo clara su nueva política y quedó expresamente ordenado que en casos como el de autos el concesionario del servicio local de luz y fuerza no tenía derecho alguno exclusivo, debiendo celebrarse los contratos directamente entre las partes interesadas y el servicio hidroeléctrico del Gobierno Insular?

A nuestro juicio a partir de esa fecha desapareció la única circunstancia compatible con la buena fe de Caratini a los efectos de exigir de Silva los veinte dólares mensuales de que se trata. El contrato entre Caratini y el Riego para Silva lo era por tres años contados a partir de junio 9, 1926, continuando después en toda su fuerza hasta que se diera por cualquiera de las partes noticia escrita con sesenta días de antelación de su deseo de terminarlo.

A lo sumo nos parece que la buena fe inicial, que el error de derecho, debe producir su efecto hasta junio 9, 1929, en que expiraron los tres años del contrato. Después de esa fecha la actitud de Caratini no tiene justificación alguna. A sabiendas continuó manteniendo en pie una situación sin base, aprovechándose de la ignorancia de los hechos tales cuales eran por parte de Silva, para seguir percibiendo de él la suma indicada. No es posible amparar con la ley, legalizar un acto semejante. Y a este respecto parece conveniente exponer que la prueba no demuestra que Caratini realizara acto alguno en beneficio de Silva durante ese tiempo, que los gastos de instalación los pagaron Silva y el Gobierno quedando la línea—postes, alambres, etc.—como propiedad del Gobierno, que si se usó algo de la primitiva línea que se construyera entre Caratini y el Gobierno para el servicio de luz en la ciudad de Coamo prestado por Caratini lo fué cuando ya esa línea de acuerdo con el contrato era propiedad del Gobierno y que Caratini no tuvo que prestar fianza ni hacer pago al-

guno por Silva que a su tiempo le remitiría todos los cheques que Caratini trasmitía al Gobierno.

El caso está en la línea y nos parece que su recta resolución tomando en cuenta todos los intereses envueltos e interpretando la ley y la jurisprudencia con ánimo de hacer justicia, *es revocar la sentencia apelada sustituyéndola por otra que decrete la devolución de lo pagado indebidamente a partir del 9 de junio de 1929 hasta enero de 1933, o sea $853.33 por cuarenta y dos mensualidades y veinte días, sin especial condenación de costas.*

El Juez Asociado Señor Córdova Dávila no intervino.