Bernardo Gautier González, demandante y apelante, *v.* Paulino Rodríguez, demandado y apelado.

Núm. 8136.—*Sometido*: Marzo 21, 1941.—*Resuelto*: Marzo 24, 1941.

*Pedro E. Anglade,* abogado del apelante; *Adolfo Porrata Doria,* abogado del apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

El demandante alega que en septiembre 28 de 1936 pagó al demandado, por error y bajo la creencia de que el demandado era abogado en ejercicio y le había prestado servicios profesionales, la suma de $1,200; que el demandado le hizo creer que él era abogado y que el demandante le adeudaba la expresada suma por gestiones profesionales realizadas en su nombre; que no es cierto que el demandado sea abogado ni tampoco que haya realizado gestión alguna a nombre del demandante; que éste ha tratado de conseguir del demandado que le devuelva la suma cobrada indebidamente, pero el demandado se ha negado a ello; y pide sentencia contra el demandado por $1,200, costas y honorarios.

El demandado admite haber recibido la suma que se le reclama, niega las falsas representaciones que se le imputan, y alega que el pago le fué hecho previo convenio verbal entre él y el demandante, y para compensar al demandado por gastos hechos y gestiones practicadas a través de un período

de 16 años en litigios entre los miembros de la Sucesión de Alberto Gautier y C. y J. Fantauzzi; que la suma recibida por el demandado fué la que le correspondía pagar al demandante como su parte en dichos gastos.

El presente recurso ha sido interpuesto por el demandante contra la sentencia de la Corte de Distrito de Guayama, por la que se desestimó su demanda y se le condenó al pago de costas y honorarios.

■■ Alega el apelante que la sentencia recurrida es contraria a la prueba y contraria a derecho.

Hemos estudiado cuidadosamente la transcripción de la evidencia, que consta de 292 páginas. Esta opinión se haría innecesariamente larga si hiciéramos una síntesis de las declaraciones de todos y cada uno de los testigos presentados por ambas partes. Los hechos esenciales que resultan de toda la prueba, son como sigue:

El demandante Bernardo Gautier es hermano de Adela Gautier, esposa del demandado. Estos dos hermanos, y otros dos llamados Margarita y Luis eran hijos naturales, reconocidos por sentencias judiciales, de Alberto Gautier, quien falleció en Francia, dejando allí la mayor parte de sus bienes y una hija legítima llamada Sofía. Creyendo que su esposa y los otros hijos naturales de Gautier tenían derecho a participar de la herencia, el demandado inició en nombre de su esposa gestiones para reclamar la herencia correspondiente a los hijos naturales reconocidos. El demandante fué invitado a tomar parte en el litigio y a contribuir para los gastos, pero se negó a ello, según sus propias palabras, "porque yo siempre creí que no se ganaba, que lo perdíamos, y por eso yo no estaba dispuesto a dar mi dinero." El demandante no hizo gestión alguna para conseguir su participación en la herencia.

Después de gestiones y negociaciones que duraron desde 1920 hasta 1936, los herederos residentes en Francia comisionaron al abogado don Tomás Bernardini para que tratase de llegar a una transacción con los herederos residentes en

Puerto Rico. Intervino dicho letrado, y después de varias conversaciones se llegó a una transacción, como resultado de la cual el demandante debía recibir y recibió la suma de $6,000. He aquí cómo relata el Sr. Bernardini lo ocurrido:.

"R. Bueno, yo procuré hacer una transacción y en efecto, valiéndome de doña Sofía, por medio de su apoderado que era don Antonio Fantauzzi, llegamos en medio de diversas conversaciones y negociaciones a una transacción. Entonces, como esta cuestión se refería a todos y yo había tratado con los hermanos que residían aquí, yo no iba a aconsejar que entraran en una transacción con los tres porque estaba don Bernardo fuera y entonces yo le dije a don Paulino que era el que había gestionado todo ese largo pleito y el que, según me consta, había sufrido y remitido gastos a Francia a los abogados, entonces yo le dije que era justo lo mismo para doña Sofía que para ellos, el que todos entraran en la transacción y que yo no me atrevía a recomendarla si no entraba también don Bernardo. Con ese motivo don Bernardo vino a mi bufete, le enteramos de la transacción, de la finca y de la cuantía de la transacción, y él vino acompañado de don Paulino y entonces llegamos a un acuerdo y tuvimos que aumentar una suma porque nosotros no habíamos contado con don Bernardo.

"   *          *          *          *          *          *          *

"R. Entonces don Bernardo estuvo conforme en la transacción, en que se hiciera la transacción por todos y yo, naturalmente, tenía que reservarme el derecho de transmitirla a doña Sofía Gautier, la hermana de ellos que actuaba representada por don Antonio Fantauzzi como apoderado aquí en Puerto Rico. Hubo que aumentar entonces la suma para favorecer a doña Sofía y para favorecer a don Bernardo y dejar el asunto terminado. La transacción versaba sobre ceder ellos, todos, ellos cuatro, ceder sus derechos hereditarios como herederos de su señor padre, don Alberto Gautier, cederlos a doña Sofía y así se terminaba la controversia legal en Francia. Cuando don Bernardo estuvo conforme con ello, entonces el Sr. Rodríguez le dijo: 'Bueno, es preciso que Ud. sepa que ahí se han hecho numerosos gastos y que los hemos hecho nosotros tres y que Ud. tiene que contribuir, como los demás, a afrontar esos gastos porque hay que hacer frente a ellos y también retribuir las gestiones que se han hecho.' Don Bernardo estuvo conforme con eso y dijo a don Paulino: 'Estoy conforme.' Entonces se habló de que don Bernardo pagaría 1,500 dólares. Él al principio dijo que él le daba

los 1,500 dólares pero que don Paulino tendría que pagarle a un hermano, que regalarle, que darle 300 dólares a un hermano que ellos tienen que no se ocupó de pedir su filiación y que no tenía nada y presumiendo que los demás le darían también algo porque es hermano de ellos aunque no está reconocido. Entonces los 1,500 pesos los redujeron a 1,200 dólares y don Bernardo convino en pagarle los 1,200 pesos a don . . . y él ocuparse de la retribución a su hermano entre todos los hermanos. Así se terminó la transacción y entonces don Paulino siguió actuando aquí conmigo que era el intermediario, era el que les facilitó la transacción, el que hizo las gestiones, el que convenció a doña Sofía, etc. Y mientras se preparaban las escrituras . . . y entonces se extendieron dos escrituras porque don Bernardo no vino, don Bernardo no vino a tiempo y entonces se hizo una escritura, como yo tenía la manifestación firme de don Bernardo y yo sabía que él es un caballero que no falta a su palabra, yo entonces procedí a otorgar una escritura por los tres y después otorgamos otra escritura por don Bernardo que se firmó el mismo día. El mismo día don Bernardo vino tarde, se le llamó por teléfono, don Paulino lo llamó y él vino entonces. vino tarde y yo tuve que extender otra escritura. Tenía la firmeza de eso y él vino en efecto y firmó la escritura. El día ese también en las conversaciones con don Paulino en que él se comprometió a darle 1,200 dólares separando los 300 pesos para el hermano que no tenía reconocimiento. Ese mismo día el Sr. Gautier espontáneamente . . .

"P. ¿Cuál Gautier, cómo se llamaba?

"R. Don Bernardo; el Sr. Gautier espontáneamente me dijo a mí que él me iba a dar 500 dólares por mi intervención y, en efecto, me trajo luego de firmada la escritura, no sé si fué el mismo día o el otro, me trajo un cheque de 500 dólares, cheque que yo guardé y que quise devolver a Fantauzzi por entender que yo no tenía, que luego él tuviera conocimiento de ese cheque, y entonces Fantauzzi me dijo: 'No no, si ese cheque se lo ha dado él espontáneamente.'

" *     *     *     *     *     *     *

"P. ¿Entonces ese día en que el demandado Bernardo Gautier convino en entregarle o darle al demandante Paulino Rodríguez los 1,200 dólares esos, se especificó allí por qué motivo había sido eso?

"R. Sí, don Paulino le dijo: 'Ud. tiene que contribuir como los demás. Nosotros hemos tenido un largo pleito, hemos mandado tantos miles de francos' yo no recuerdo ese detalle y le habló de los gastos que realmente había tenido. Yo he visto cartas que me mostró don Paulino sobre eso de sus abogados allá en Francia. Y para

contribuir a eso igual que los demás, a los gastos de ese largo pleito que sostenían y que fué que se celebró la transacción por intervención y consejo mío, para eso fué que le dió los 1,200 dólares.

"P. ¿De suerte que la entrega de ese dinero que hizo don Bernardo, la hizo voluntariamente?

"R. Seguro.

"P. ¿A conocimiento de lo que estaba haciendo?

"R. Y en consideración a la transacción que se hacía a la, cual había entrado él condicionalmente con don Paulino de pagar esa suma y la pagó.

"P. Dígame una cosa, ¿en algún momento Paulino, el demandado, dijo allí que él era abogado o actuó como abogado?

"R. No, hombre, no; don Paulino ni era abogado, ni habló como abogado, ni podía hablar como abogado."

Las declaraciones del demandado y del Lic. Bernardini fueron corroboradas por las de Adela y Margarita Gautier, hermanas del demandante.

El demandante basó su alegado derecho a que el demandado le devolviese la suma reclamada, en la supuesta falsa representación que le hiciera el demandado, al efecto de que él era abogado autorizado para ejercer la profesión y que la suma que le cobraba era por servicios prestados al demandante como su abogado en los procedimientos seguidos para la reclamación de la herencia de Gautier. Para sostener dicha alegación, el demandante ofreció el testimonio de dos individuos que trabajaban en el garage y en la casa del demandante, lavando automóviles y desyerbando el patio. Ambos declararon lo mismo: que un día de septiembre de 1936 salieron en automóvil con el demandante, desde Martín Peña hacia Patillas; que al llegar a Patillas el demandante entró a la casa del demandado, permaneciendo allí como 15 minutos; que después de ir a la oficina del demandado, regresaron ambos con unos papeles, montaron en el automóvil y salieron para Guayama; que el demandado iba guiando y a su lado iba el demandante, yendo detrás los dos testigos; que en el camino el demandante y demandado hablaron sobre

algo que el primero tenía que pagarle al segundo, *por su trabajo como abogado;* que don Paulino le decía que tenía que pagarle *por su trabajo de abogado* por lo menos $1,500 y por fin convinieron en $1,200.

La corte inferior no dió crédito a las declaraciones del demandante y de sus dos empleados en cuanto a la alegada falsa representación de que el demandado era abogado en ejercicio y que lo que cobraba era por servicios profesionales. Es en verdad difícil creer que el demandante pudiera ser engañado tan fácilmente por el demandado, quien llevaba más de veinte años de casado con su hermana y a quien visitaba frecuentemente, y que el demandante no supiese que el demandado nunca ha sido abogado y nunca ha estado autorizado para ejercer la abogacía.

Las conclusiones de la corte sentenciadora, con las cuales estamos enteramente conformes, son como sigue:

·''Ésta es una acción ejercitada de acuerdo con las disposiciones contenidas en los artículos 1796 y siguientes del Código Civil, ed. 1911, y por consiguiente, el demandante tenía que probar que el demandado había recibido de él una suma de dinero que no tenía derecho a cobrar y que la entrega de dicho dinero la había efectuado por error de hecho. *Sucn. Marín* v. *Municipio,* 28 D.P.R. 515; *Dávila* v. *Martíez,* 37 D.P.R. 846, y *Silva* v. *Sucn. Caratini,* 51 D.P.R. 778.

''La contención del demandado, por el contrario, fué que el demandante le satisfizo voluntariamente y con conocimiento de los hechos del caso la suma de $1,200 para compensarle por sus gestiones y gastos en que incurriera en relación con la reclamación entablada por sus otros tres hermanos contra la sucesión legítima de Alberto Gautier en reclamación de sus porciones hereditarias, habiendo correspondido al demandante, al transigirse la reclamación, la suma de $6,000.

''Hemos estudiado toda la evidencia practicada por ambas partes y es nuestra opinión que la preponderancia de la misma está a favor de la contención del demandado y por tanto que se probó a satisfacción de la corte que el pago por el demandante al demandado de la suma de $1,200 fué hecho por aquél voluntariamente y con conocimiento de todos los hechos del caso y para compensar al demandado por sus gestiones y gastos incurridos en la tramitación de la referida recla-

mación. *American Railroad Co. of P. R.* v. *Wolkers*, 22 D.P.R. 283; *Pérez* v. *Nogueras,* 31 D.P.R. 261, y *Rubio Salinas* v. *Salvador R. Nin, Inc.,* 48 D.P.R. 977.''

Opinamos que las conclusiones que preceden están ampliamente sostenidas por la evidencia y que *la sentencia recurrida debe ser confirmada.*