SALVADOR R. QUIÑONES, patrono, peticionario ante la Comisión Industrial, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada y EL ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurridos.

Núm. 240.—*Sometido:* Abril 6, 1942. *Resuelto:* Mayo 20, 1942.

*Jorge Benítez Gautier,* abogado del recurrente; *Hon. Procurador General George A. Malcolm, M. Rodríguez Ramos, Procurador General Auxiliar* y *Guillermo Atiles Moréu, Angel de Jesús Matos* y *Joaquín Correa,* abogados los tres últimos del Fondo del Seguro del Estado, abogados del Administrador del Fondo.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El recurrente Salvador Quiñones, ingeniero civil, alega que en abril de 1937 contrató la instalación en las calles de Mayagüez de una tubería para el desagüe de aguas negras y que al asegurarse en el Fondo del Estado, el Administrador clasificó la obra bajo la clave 6306, prima $11.15 por cada cien de jornales.

No conforme, apeló para ante la Comisión Industrial, alegando que la clave aplicable era la 6319, prima $5.75 por cada cien de jornales. La Comisión le dió la razón y llevado el asunto al Tribunal Supremo, éste confirmó a la Comisión por sentencia de marzo 11, 1938, 52 D.P.R. 826.

El trabajo ejecutado por el recurrente en Mayagüez duró hasta julio 14, 1938, fecha en que el Fondo del Estado liquidó su póliza, tomando como base la clave 6319, más no la prima del año económico inicial 1936–37, pues en vez de hacerlo a razón de $5.75 por ciento, aplicó el tipo según fué aumentado a principios de cada año económico siguiente, a saber: mayo 17 a junio 30, 1937, $5.75 por ciento; julio 1, 1937, a junio 30, 1938, $10.51 por ciento, y julio 1 a julio 14, 1938, $9.75 por ciento.

Aunque el Administrador del Fondo consideraba al recurrente como un patrono ocasional, aumentó y cobró los tipos del seguro según su interpretación unilateral del estatuto conforme a la práctica seguida hasta febrero 14, 1940, en que la Corte Suprema resolvió el caso de *Miró* v. *Comisión Industrial,* 56 D.P.R. 127, y así desde abril 30, 1937 en que se expidió la póliza hasta la liquidación final, el Administrador practicó varias liquidaciones semestrales, pagando siempre el recurrente bajo protesta las primas que se le cobraron.

Después de la liquidación final como resultado de la cual el Administrador le cobró de más $3,340.85, el recurrente le pidió una rectificación aplicando un solo tipo, el de $5.75 por ciento, y el Administrador se negó por entender que la ley le confería autoridad para variar anualmente los tipos de prima fijados en el contrato de seguro original aun cuando se tratara de patronos ocasionales, criterio contrario a lo resuelto por el Tribunal Supremo en *Miró* v. *Comisión Industrial,* supra.

El recurrente apeló de la resolución del Administrador para ante la Comisión Industrial y ésta resolvió el caso en su contra. Pidió reconsideración y le fué negada. Interpuso entonces el presente recurso de revisión ante este tribunal.

■■ Los hechos alegados por el recurrente pueden tomarse como ciertos excepción hecha del relativo al pago bajo protesta que no fué comprobado y con la aclaración de que la gestión sobre devolución de lo pagado de más conforme a

la regla establecida en la decisión de *Miró* v. *Comisión Industrial,* supra, se hizo después de febrero 14, 1940, fecha de dicha decisión.

La cuestión a resolver es, pues, la de si interpretada por esta Corte Suprema en febrero 14, 1940, la ley aplicable en el sentido de que cuando se trata de patronos ocasionales la prima que debe cobrarse es la fijada al otorgarse la póliza aunque la obra dure varios años, está el Fondo del Seguro del Estado obligado a devolver primas cobradas y pagadas sin protesta en los años 1937 y 1938 de acuerdo con la práctica entonces seguida que era la de cobrar las primas fijadas anualmente por el Administrador aunque fueran mayores o menores que las del año en que la póliza se otorgara.

La Comisión decidió que no existía tal obligación porque si bien se pagó algo indebido de conformidad con la ley tal como quedó interpretada por este tribunal, el pago se hizo por error de derecho y no de hecho, en cuyo caso no procede la devolución de lo pagado. Parece justo transcribir el razonamiento de la propia Comisión por su ponente el Sr. M. León Parra. En lo pertinente dice:

"No hay duda, con vista de la resolución de nuestro Hon. Tribunal Supremo de 14 de febrero de 1940, dictada en el caso del patrono Sr. Manuel Miró, que el del caso del epígrafe Sr. Salvador Quiñones, incurrió en error al pagar al Administrador del Fondo del Estado, primas distintas a la de 5.75 por ciento, durante los dos años subsiguientes al año económico 1936–37 en que tuvo necesidad de tener asegurado a sus obreros para el riesgo 'extensión de tuberías.' Pero ello supone la comisión por su parte de un error de derecho al interpretar equivocadamente el alcance de una ley, y el efecto de esta clase de error, según resolvimos en el caso de Soller Sugar Co., peticionario, sobre 'Cobro indebido de recargos de primas atrasadas' dictada por esta Comisión con fecha 14 de julio de 1937, que aparece en la página 333 y siguientes del Vol. Núm. 5 de las Decisiones de esta Comisión Industrial de Puerto Rico 'la ley y la jurisprudencia entienden que al pagar el patrono (Quiñones) lo hizo por ignorancia de la Ley en vigor, en cuyo caso cometió error de derecho y la ley no lo ampara para pedir la devolución de lo pagado.'

"Transcribimos allí el comentario que el tratadista Sr. Manresa y Navarro hace del artículo 1895 del Código Civil Español, equivalente al 1795 del nuestro que dice así:

" '1. Concepto jurídico del cuasicontrato del cobro de lo indebido . . . es preciso, en primer término, que el que recibe en pago la cosa objeto del mismo no tenga derecho a percibirla o a cobrar, pues de lo contrario, no sería indebido el cobro hecho por él. Es también condición indispensable de este cuasicontrato, que el pago se haga por error, pues de faltar éste no habría sido indebidamente entregada la cosa con que se realizó . . .

" 'Pero aunque el artículo no determina la clase de error que ha de concurrir en el pago, desde luego se comprende que éste ha de ser el de hecho, porque el de derecho no aprovecha a nadie, y no puede, por lo tanto, originar dicho cuasicontrato.

" 'Así resulta no sólo del espíritu del Código, sino también hasta de la letra del mismo, pues, como ha dicho el Sr. Pedregal, rectamente estudiando el art. 1901 (1801 C. C. de P. R.), dentro de su precepto está el "que la devolución de lo cobrado, y la indemnización de perjuicios en su caso, procede sólo cuando ha habido error de hecho en el pago; porque si se entregare una cosa en propiedad sabiendo que no se debe, se revela tácitamente la intención de realizar un acto de liberalidad que en nada debe obligar al que la recibe, porque a nadie pueden imponérsele obligaciones en el orden civil sin su libre consentimiento."

" 'De la misma opinión son el Sr. Sánchez Román y el Sr. Falcón, el cual afirma que *si la paga se hizo por error de derecho, ni existe el cuasicontrato, ni está obligado a la restitución el que cobró, aunque no se debiera lo que se pagó.*

" 'Esta era también la regla de derecho reconocida en la legislación anterior al Código, según la que era igualmente requisito indispensable del cuasicontrato mencionado el error de hecho por parte del que paga, pues si pagó indebidamente a sabiendas de que no debía, *o si lo hizo con certeza en el hecho, pero con error en el derecho por no ser exigible civilmente la deuda,* como, por ejemplo, si lo debido lo era en virtud de una obligación natural, entonces no existía dicho cuasicontrato, y, en su virtud, no podía reclamarse la devolución, reputándose en tal caso que tuvo intención de donar lo entregado en dicho concepto.' (Bastardillas nuestras.)

"Y continuamos diciendo en esa sentencia:

" ' *       *       *       *       *       *       *

" 'Este principio no es exclusivo de nuestra Legislación Civil Común de origen romano y contextura francesa; y así tenemos que en los Estados Unidos de Norte América, se sustenta un principio igual, según vamos a ver: Se lee en 30 CYC 1313 como sigue:

" 'D. Mistake.—Of Law. 9 a. General Rule.—Except where it is otherwise provided by statute, the general rule is that a voluntary payment made under a mistake or in ignorance of the law, but with full knowledge of all the facts, and not induced by any fraud or improper conduct on the part of the payee, cannot be recovered back. And in so far as this rule is concerned, there is no difference between ignorance and mistake of law. It applies to a corporation as well as to a natural person, and in equity as well as in law.

" 'En un caso de la Corte de Apelaciones del Estado de Nueva York, el de *Newburg Sav. Bank* v. *Town of Woodbury*, 173 N. Y. 55–1903, se desarrolló con gran claridad este principio invocándose en el cuerpo de la opinión, copiosa jurisprudencia en refuerzo de la resolución.

    ※        ※        ※        ※        ※        ※        ※

" 'La Corte de Apelaciones . . . dijo:

" ' "Creemos que la regla general de que dinero pagado bajo un error de derecho no puede ser recuperado, la cual fué expuesta y aplicada en estos casos, es aplicable al que pende antes nos . . . El demandante adelantó dinero al pueblo sobre sus bonos con el propósito específico de hacer posible que el pueblo cumpliese con lo que supone era su obligación hacia los soldados conscriptos y estos últimos recibieron el dinero por virtud de la Ley tal como existía, bajo reclamación de un derecho. Todas las partes suponían en aquella fecha que los· soldados conscriptos tenían derecho al dinero y que era su derecho luego el recibirlo. Ahora resulta que todos estaban equivocados; pero la equivocación fué una de Ley, por lo tanto, los soldados conscriptos que recibieron el dinero bajo esas circunstancias no están en obligación hacia el demandante de devolver lo que han recibido." ' "

Ésa ha sido la constante jurisprudencia de este propio Tribunal Supremo. Véanse los casos de *Arandes* v. *Báez,* 20 D.P.R. 388; *Am. R. R. Co. of P. R.* v. *Wolkers,* 22 D.P.R. 283; *Sucesión Marín* v. *Municipio de Arecibo,* 28 D.P.R. 515, y *Silva* v. *Sucn. Caratini,* 51 D.P.R. 778.

Pero el recurrente insiste en que a su caso no es aplicable la doctrina general del pago de lo indebido, si que su pago, dadas las circunstancias que en él concurrieron, debe considerarse como involuntario, siendo en su consecuencia claro su derecho al reintegro una vez que quedó establecida su ilegalidad por la sentencia de esta corte que aunque posterior al mismo constituye la ley desde un principio. *A. Cuesta & Cía.* v. *Sancho Bonet, Tes.,* 54 D.P.R. 87.

Para sostener su contención cita el recurrente parte del párrafo 181 del tratado sobre "Payment" de Ruling Case Law. Todo el párrafo expresa:

"La regla general al efecto de que un pago voluntario hecho mediante error de derecho mutuo no puede ser recobrado, ha sido invocada frecuentemente como una defensa en recursos instituídos contra funcionarios públicos con el fin de recobrar supuestos derechos (*fees*) ilegales exigidos por ellos. Pero las cortes generalmente favorecen el punto de que si se hace una reclamación ilegal por cualquiera persona que desempeña un cargo oficial, so color de autoridad para exigirla, y tal reclamación constituye una restricción del ejercicio de un derecho o privilegio indubitado, y en su ejecución no hay oportunidad de impugnar su validez, el pago de la reclamación con el fin de eliminar tal restricción, es obligatorio y no voluntario. De este modo, está firmemente establecido que cuando se exige dinero por un funcionario público en exceso de sus derechos legales, y le es pagado, para obtener el cumplimiento de un deber oficial, al cual la parte tiene derecho sin efectuar tal pago, procede una acción para recobrar el dinero, como pagado involuntariamente. Por ende, la exigencia por un oficinista o cualquier funcionario, con la oposición de una parte, de derechos ilegales como condición para radicar un documento en su oficina, a la radicación del cual la parte tiene derecho, hace obligatorio el pago de tales derechos. De igual manera, un comisionado de embarques que exige y recibe derechos no autorizados por reembarcar miembros de la tripulación de una embarcación para el próximo viaje, puede ser obligado a reembolsar las sumas exigidas, en una acción iniciada a tal fin. Pero el pago de un derecho ilegal por licencia, no se considerará compulsorio cuando la licencia no es exigible como un derecho. La razón que sostiene la regla es que el funcionario y el público que tiene negocios que hacer

con él no se encuentran en el mismo nivel. Es el deber principal del funcionario conocer a fondo la ley bajo la cual actúa y saber precisamente cuánto él está autorizado a exigir por sus servicios; pero con el público es diferente. No tiene ni el tiempo ni la oportunidad de adquirir la información necesaria que le permita saber si el funcionario está o no exigiendo demasiado, y como regla general, confiando en su honradez e integridad, accede a sus demandas. De ahí es que para la injusticia del funcionario al cobrar derechos ilegales, se provee una penalidad estatutaria a favor de la parte perjudicada. En verdad, esta clase de pagos descansa sobre una base diferente a la de cualquiera otra clase de pagos involuntarios, y un reembolso se concederá más rápidamente, no sólo debido a la desigualdad de la posición de las partes, si que también por razones de política pública para evitar la extorsión por parte de los funcionarios. La distinción que debe observarse es entre un pago hecho con el propósito de proteger o asegurar el actual disfrute de un privilegio, al cual la persona tiene derecho inmediato, y un pago hecho para evitar la violación, mediante amenaza, de tal derecho, cuando no hay autoridad para intervenir con su disfrute, hasta que el derecho de la parte que amenaza sea establecido en un procedimiento judicial en el cual los derechos de las respectivas partes puedan ser presentados y determinados. En el último caso, un pago hecho para evitar tal alteración mediante amenaza, se considera como voluntario, mientras que en el primero es compulsorio." 21 R.C.L. 156.

Sin recurrir al examen minucioso de las decisiones en que el texto de la obra se basa, por el texto mismo se infiere que se trata de situaciones distintas a la de este caso.

Aquí no sólo el recurrente tenía un claro derecho a apelar de la regla del Administrador para ante la Comisión y para ante esta Corte Suprema en su día, si que supo ejercitar ese derecho cuando el Administrador le aplicó la clave 6306 en vez de la 6319 en relación con la misma póliza de que se trata. Además, no es éste un caso de "illegal fees"; lo que hizo el Administrador del Seguro del Estado fué aplicar al recurrente la regla uniforme que venía aplicando con aparente autoridad a todas las personas que se encontraban en su misma situación y que fué revocada cuando una de ellas la impugnó dentro del procedimiento de ley.

Siendo ello así, nos parece que no hay motivo justificado para resolver que erró la Comisión al decidir el caso de acuerdo con la regla general sobre pago de lo indebido y por consiguiente que *debe declararse no haber lugar a la revisión de sus resoluciones de marzo 20, 1941 y febrero 6, 1942, quedando las mismas confirmadas.*