HERMENEGILDO COLÓN COTTO, demandante, recurrente y re-
currido, *v.* ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE
LOS EMPLEADOS DEL GOBIERNO Y DE LA JUDICATURA, deman-
dada, recurrida y peticionaria.

*Número:* CE-95-133          *Resuelto:* 24 de septiembre de 1996

*Carlos Lugo Fiol, Procurador General* y *Subprocurador Gene-
ral,* y *Delmarie Vega Lugo, Procuradora General Auxiliar,*
abogados del peticionario; *Raúl Caballero Meléndez,* abo-
gado del recurrido.

## SENTENCIA

Mediante una petición de *certiorari,* el Procurador Ge-
neral solicita que revisemos la sentencia dictada por el en-
tonces Tribunal Superior, Unidad Especial de Jueces de
Apelaciones.[1] Por medio de dicha sentencia, el foro a quo
revocó una resolución emitida por la Junta de Síndicos de
la Administración de los Sistemas de Retiro de los Emplea-
dos del Gobierno (en adelante la Administración) que le
imponía al Sr. Hermenegildo Colón Cotto la obligación de
devolver una pensión por una incapacidad ocupacional in-
debidamente pagada. El Tribunal Superior concluyó que la
Administración había incurrido en un error de derecho al
interpretar la legislación aplicable y determinó que no pro-
cedía la devolución de lo indebidamente pagado. Exami-

---

[1] Un examen del volante de notificación de la sentencia recurrida revela que
aparecen dos (2) fechas distintas en que alegadamente se archivó copia de ésta. En
vista de tal incompatibilidad, solicitamos a la Secretaría de este Tribunal que inves-
tigara en la Secretaría del Tribunal Superior recurrido cuál de las dos (2) fechas era
la correcta. El resultado de tal investigación reflejó que la fecha correcta era la de 23
de enero de 1994. Por tal razón estamos utilizando ésta como la fecha de archivo.

nada la sentencia recurrida a la luz del derecho aplicable, revocamos. No obstante, en vista de las circunstancias particulares de este caso, revisamos el cómputo de la cantidad que el pensionado tiene que devolver a la Administración y remitimos el caso al foro de instancia para que establezca un plan de pago razonable.

I

De los autos se desprende que el Sr. Hermenegildo Colón Cotto laboraba como guardia dentro de la Policía de Puerto Rico cuando sufrió un accidente del trabajo. Como resultado del accidente, Colón Cotto sufrió múltiples lesiones y fracturas, de las cuales el Fondo del Seguro del Estado le concedió un diez por ciento (10%) de incapacidad por las lesiones fisiológicas con diagnóstico de *Síndrome Residual Crónico y cráneo cerebral*, y un cincuenta por ciento (50%) por una condición emocional, que fue diagnosticada como *Esquizofrenia Indiferenciada.*

Posteriormente, durante 1978, Colón Cotto obtuvo los beneficios de una pensión por incapacidad ocupacional de la Administración. A la fecha del retiro él devengaba un salario de seiscientos noventa dólares ($690) mensuales. La pensión que le fue concedida ascendía a trescientos veinte dólares ($320) mensuales, la cual sería efectiva a partir de 16 de marzo de 1978.

Durante una reevaluación médica de rutina realizada al pensionado en mayo de 1989, éste le informó al psiquiatra de la Administración que tenía "un negocito" dedicado a la venta de piezas para estufas. Como consecuencia de ello, la Administración llevó a cabo una investigación mediante la cual comprobó que efectivamente el pensionado trabajaba por cuenta propia.

El 16 de febrero de 1990, la Administración notificó al recurrido la suspensión de los beneficios por incapacidad. Ello debido a que en su negocio devengaba una retribución

igual o mayor a la pensión concedida, que para ese momento era de trescientos setenta dólares ($370) mensuales. Dos (2) años después la Administración le notificó que había incurrido en cobro indebido de pensión durante el período del 1ro de julio de 1986 hasta el 28 de febrero de 1990, y que tenía que devolver la cantidad total de dieciséis mil ciento treinta dólares ($16,130).

Oportunamente, Colón Cotto apeló esta decisión ante la Junta de Síndicos de la Administración. La Junta confirmó la determinación de la Administración. Después de agotar los trámites administrativos, Colón Cotto presentó un recurso de revisión ante el Tribunal Superior.

El entonces Tribunal Superior emitió una sentencia en la que revocó la parte de la resolución que imponía al pensionado la obligación de devolver el pago de las pensiones percibidas. Sostuvo el foro a quo que la Administración había incurrido en un error de derecho al incumplir con el mandato de una ley e interpretar dicha ley de forma equivocada, por lo cual no procedía la devolución de lo indebidamente pagado.

Inconforme con esta decisión la Administración presentó una petición de *certiorari* en la que sostuvo que la agencia no había cometido un error de derecho al interpretar el mandato legislativo. Según esta óptica, la Administración reitera que procedía la devolución de las pensiones pagadas indebidamente a Colón Cotto.

Examinado el recurso presentado, expedimos el auto. Con el beneficio de las comparecencias de las partes y de un estudio cuidadoso de los autos elevados, estamos en posición de resolver.

## II

Mediante la Ley de Retiro del Personal del Gobierno de Puerto Rico, Ley Núm. 447 de 15 de mayo de 1951 (3 L.P.R.A. sec. 761 *et seq.*), se creó un sistema de retiro y de

beneficios para los empleados públicos. Uno de los beneficios concedidos por el estatuto es la pensión por incapacidad ocupacional. Este beneficio se le otorga a aquellos participantes que se inhabiliten total y permanentemente, y que por esta razón no puedan cumplir con los deberes de su posición.

El Art. 11 de esta ley, 3 L.P.R.A. sec. 771, establece las reglas que regirán las anualidades por incapacidad concedidas por la Administración. Para fiscalizar este programa y evitar que algunas personas reciban sus beneficios y continúen trabajando, se le otorgó a la Administración el poder para investigar periódicamente a los pensionados para determinar el estado de salud del participante y su grado de incapacidad. En lo pertinente al caso de epígrafe, el citado Art. 11 dispone que "[e]l Administrador exigirá que todo pensionado que esté disfrutando de una anualidad por incapacidad se someta periódicamente a un examen que practicarán uno o más médicos nombrados por el Administrador para determinar el estado de salud del participante y su grado de incapacidad". Si en este examen se encuentra que el pensionado se ha recuperado de su incapacidad lo suficiente como para trabajar, el participante tendrá derecho a ser reinstalado en cualquier posición en la agencia de la cual se separó por razón de su incapacidad. 3 L.P.R.A. sec. 771.

En 1986 se aprobó la Ley Núm. 61 de 1ro de julio, 3 L.P.R.A. sec. 771, a los efectos de enmendar el referido Art. 11. Dicha enmienda autorizó a la Administración a suspender el pago de la anualidad "cuando el pensionado comience a devengar cualquier retribución por servicios prestados al Gobierno de Puerto Rico o cuando se dedique a ocupaciones no gubernamentales o por cuenta propia en las que devengue una suma igual o mayor al importe de la pensión". 3 L.P.R.A. sec. 771. Antes de la aprobación de esta enmienda, se permitía que el participante laborara en

cualquier gestión siempre que no fuera con el Gobierno de Puerto Rico o con una de sus instrumentalidades.

Esta enmienda entró en vigor el 1ro de julio de 1986. Dicha enmienda creó un mecanismo para la suspensión automática de la pensión, sin necesidad de un examen médico, en el caso de que el pensionado estuviese trabajando y recibiendo una retribución igual o mayor al monto de su pensión. Como el beneficio por incapacidad ocupacional tiene el propósito de compensar al empleado por la pérdida de ingresos al carecer de la capacidad física o mental para participar de la fuerza trabajadora, el estatuto presume que cuando el beneficiario se reintegra al mercado de trabajo y genera suficientes ingresos, es porque se ha recuperado de su incapacidad.

En su texto, la enmienda citada no hace distinción entre las pensiones adquiridas antes o después de su aprobación. Aunque como norma general las leyes no pueden tener un efecto retroactivo, esto no impide su aplicación a hechos que ocurran después de que el estatuto entró en vigor. Eso precisamente fue lo que ocurrió en el caso de autos.

## III

Como único señalamiento, la Administración sostiene que el entonces Tribunal Superior erró al determinar que se había cometido un error de derecho. Expone que el error cometido por la Administración tuvo su base en el desconocimiento de que el pensionado tenía un negocio por cuenta propia y devengaba una retribución igual o mayor a la anualidad por incapacidad.

El Art. 1795 del Código Civil, 31 L.P.R.A. sec. 5121, dispone que "cuando se reciba alguna cosa que no había derecho a cobrar, y que por error ha sido indebidamente entregada, surge la obligación de restituirla". Para que se configure este cuasicontrato es necesario que se haya pa-

gado indebidamente y que dicho pago se haga por error o por equivocación, y no por mera liberalidad. *Silva v. Sucn. Caratini*, 51 D.P.R. 778 (1937). Este cuasicontrato requiere que quien recibe el pago no tiene derecho a recibirlo.

La jurisprudencia de este Tribunal ha sostenido que el que recibe alguna cosa a la cual no tenía derecho a cobrar, y que por un *error de hecho* ha sido indebidamente pagada, tendrá la obligación de restituirla. Por el contrario, cuando lo indebidamente pagado surja como consecuencia de un *error de derecho*, dicha persona no estará obligada a restituirla. *E.L.A. v. Asoc. Empleados Obras Púb. Mun.*, 126 D.P.R. 320 (1990); *Aulet v. Depto. Servicios Sociales*, 129 D.P.R. 1 (1991); *Sucn. Choisne v. Municipio*, 100 D.P.R. 501, 503 (1972). Por esta razón, cuando una agencia interpreta erróneamente una ley al considerar los derechos del reclamante, hemos concluido que esto configura un error de derecho y, por lo tanto, no es exigible la devolución de lo pagado de forma indebida. *Cartagena v. E.L.A.*, 116 D.P.R. 254, 257 (1985); *Quiñones v. Comisión Industrial*, 60 D.P.R. 447 (1942).

En el caso particular de la Administración, el estatuto expresamente la autoriza "a recobrar cualesquiera pagos erróneos o indebidamente hechos". 3 L.P.R.A. sec. 787. De esta manera, la legislación es compatible con el esquema del Código Civil al disponer un mecanismo para recobrar lo pagado indebidamente cuando se trata de un *error de hecho*.

## IV

En el caso de autos, el pensionado recibía una pensión por incapacidad ocupacional al amparo de la Ley Núm. 447, *supra*. Mientras recibía esta pensión, estableció un negocio para arreglar estufas, mediante el cual devengaba una retribución igual o mayor al importe de la pensión que disfrutaba. La Administración advino en conocimiento de

la nueva realidad fáctica del pensionado en mayo de 1989, cuando él mismo lo informó en el examen médico al cual periódicamente se sometía. En octubre de 1989 la Administración realizó la investigación correspondiente y confirmó la información suministrada por Colón Cotto. Sin embargo, no fue hasta febrero de 1990 que la Administración efectivamente suspendió los beneficios concedidos a Colón Cotto e inició el proceso que origina este caso.

De los autos no se desprende que antes de la reevaluación periódica que se hizo en 1989, la Administración había cumplido en este caso con el mandato legislativo de investigar periódicamente y de suspender la pensión por incapacidad a quienes devengaban otra retribución igual o mayor que el beneficio concedido. De hecho, aún después de haber sido informado por el pensionado, el Administrador no realizó de inmediato una investigación para determinar si los ingresos que recibía de la otra fuente eran iguales o mayores que la pensión.

Desde el momento en que la Administración confirmó en octubre de 1989 que él tenía un negocio propio, la agencia tenía la información necesaria para suspender la pensión a base del derecho aplicable. Al no completar la investigación y al no suspender los pagos en ese momento, la Administración cometió un *error de hecho*. Por ende, todos los pagos efectuados a partir de dicha fecha podían ser recobrados a través del mecanismo provisto por la ley.

En el caso particular de autos tenemos presente que no hay evidencia de que Colón Cotto engañó a la Administración o le suministró información falsa. Más bien de los autos se desprende todo lo contrario. Él informó voluntariamente que estaba recibiendo otros ingresos para complementar su pensión módica por incapacidad ocupacional. Además, hasta 1986 la ley aplicable permitía que los pensionados devengaran ingresos de fuentes no gubernamentales y del expediente no se desprende que la Administración haya llevado a cabo una campaña de orien-

tación entre los beneficiarios para informarles de los cambios introducidos por la nueva ley.

Por todo lo anterior, la Junta erró al ordenar la devolución de la totalidad del dinero pagado a Colón Cotto desde la aprobación de la enmienda a la ley. Sin embargo, también el foro de instancia erró al concluir que no procedía la devolución de lo indebidamente pagado. *Por las circunstancias particulares de este caso*, resolvemos que Colón Cotto sólo tiene la obligación de devolver la pensión recibida a partir de octubre de 1989, fecha cuando la Administración comprobó que él tenía un negocio propio.

En estas circunstancias, *se dicta sentencia para revocar el dictamen recurrido y se devuelve el caso al foro de instancia para que establezca un plan de pago razonable para la devolución del dinero pagado de forma indebida a Colón Cotto y para cualquier otro trámite ulterior que sea compatible con lo resuelto en este caso.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario del Tribunal Supremo. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Negrón García. El Juez Asociado Señor Rebollo López no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario del Tribunal Supremo*

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une el Juez Asociado Señor Negrón García.

En el caso de autos, la Administración de los Sistemas de Retiro de los Empleados del Gobierno (en adelante la Administración) descubrió en *mayo de 1989* que Colón Cotto, un pensionado por incapacidad, trabajaba por cuenta propia. Ello, por información que dicho pensionado volun-

tariamente le proveyó. En octubre de ese año, la Administración verificó la información suministrada por el pensionado, pero no fue hasta febrero de 1990 que, con arreglo a la Ley Núm. 61 de 1ro de julio de 1986 (3 L.P.R.A. sec. 771), suspendió a éste los beneficios que estaba recibiendo.

Conforme a la referida ley, la Administración tenía el *deber jurídico* de suspender los beneficios del pensionado a partir de octubre de 1989, *pero no lo hizo*. En su propia sentencia, la mayoría de este Tribunal así lo reconoce al señalar que:

> Desde el momento en que la Administración confirmó en octubre de 1989 que el [pensionado] tenía un negocio propio, la agencia tenía la información necesaria para suspender la pensión a base del derecho aplicable.

Al no suspender los pagos en octubre de 1989, pues, la Administración *incumplió con el mandato de ley*. Ello constituye un *"error de derecho"*, no un "error de hecho", como equivocadamente resuelve la mayoría en su sentencia, en la cual se ordena al pensionado a devolver los beneficios en cuestión a partir de octubre de 1989.

La distinción entre un tipo de error y el otro está claramente establecida en nuestra jurisprudencia. Cuando se paga lo que no se debe, por ignorar la ley o por interpretarla o aplicarla erróneamente, se trata de un error de *derecho* y no se puede pedir la devolución de lo así pagado. *Aulet v. Depto. Servicios Sociales*, 129 D.P.R. 1 (1991); *Cartagena v. E.L.A.*, 116 D.P.R. 254 (1985); *Fuentes v. Aponte*, 62 D.P.R. 722 (1943); *Quiñones v. Comisión Industrial*, 60 D.P.R. 447 (1942); *Silva v. Sucn. Caratini*, 51 D.P.R. 778 (1937).

En este caso no hubo ningún error con respecto a los hechos. La información provista por el pensionado fue veraz y legítima. La agencia así lo verificó, por lo que tenía la información correcta y necesaria para actuar. *La Administración evidentemente tenía ante sí los hechos exactos de lo acontecido*, pero tardó meses en *aplicar la ley*. Se trata

evidentemente de un error jurídico de la agencia, por lo que, conforme a la norma vigente en nuestra jurisdicción que la mayoría reitera en su sentencia, no procedía que se le ordenara al pensionado devolver lo que se le pagó indebidamente durante los meses aludidos, como equivocadamente dictamina la mayoría en su sentencia.[1]

## II

La sentencia emitida por la mayoría tiene otro defecto, de mayor envergadura que el anterior. El pensionado en el caso de autos obtuvo su pensión en 1978. Para esa época, la Ley de Retiro del Personal del Gobierno de Puerto Rico (en adelante Ley de Retiro) que lo cobijaba, 3 L.P.R.A. sec. 761 *et seq.*, disponía que si un pensionado por incapacidad se recuperaba lo suficiente como para trabajar, éste tenía derecho a ser reinstalado a la agencia de la cual se había retirado.

En 1986, ocho años después de Colón Cotto haberse retirado, la citada Ley de Retiro se enmendó para disponer, en lo pertinente, que cuando un pensionado devengare por trabajo propio cualquier retribución igual o mayor a la pensión que recibe, se puede suspender el pago de la pensión que esté recibiendo. Es evidente que esta enmienda constituye una *modificación sustancial* al sistema de retiro en cuestión, y es bajo tal enmienda que la Administración le suspendió la pensión de Colón Cotto en febrero de 1990.

---

[1] La doctrina civilista moderna, amparada en una sentencia del Tribunal Supremo español, considera que, según el Art. 1795 del Código Civil (Art. 1895 del Código español), 31 L.P.R.A. sec. 5121, quien recibe el pago de lo indebido debe restituirlo, sin que importe si el error fue de hecho o de derecho. Véase J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1983, T. II, Vol. III, págs. 35–37.

Esta postura, claro está, no es la que se ha sostenido reiteradamente en nuestra jurisprudencia. Quizás ha llegado el momento de revisar la norma que ha prevalecido en Puerto Rico. Pero, no es eso lo que hace la mayoría en este caso. Al contrario, ésta afirma la doctrina tradicional, pero la aplica erróneamente.

Por lo anterior, cabe preguntarse si dicha enmienda era aplicable a Colón Cotto. Es decir, como éste ya estaba acogido a una pensión cuando se enmendó la Ley de Retiro, es claramente cuestionable si dicha enmienda podía hacerse extensiva a su caso, a la luz de lo que resolvimos en *Bayrón Toro v. Serra*, 119 D.P.R. 605 (1987). Allí, al amparo de la doctrina de derechos adquiridos, resolvimos que una vez el empleado se ha retirado, su pensión no está sujeta a cambios o menoscabos que resulten de posteriores enmiendas legislativas a la Ley de Retiro.

La mayoría nada dice sobre este medular asunto, olvidando así nuestra esencial postura en *Bayrón Toro v. Serra*, supra, de que quedaba descartada "la arcaica noción de que las pensiones son una gracia o dádiva del soberano".

### III

Como la mayoría confunde el "error de hecho" con el "error de derecho" y, además, no explica por qué la enmienda a la Ley de Retiro en cuestión no constituye un menoscabo de un derecho adquirido del pensionado en el caso de autos, disiento.