ARIEL AULET LEBRÓN ET ALS., demandantes y peticionarios, *v.* DEPARTAMENTO DE SERVICIOS SOCIALES, demandado y recurrido; OLGA M. VELÁZQUEZ RIVERA ET ALS., demandantes y peticionarios, *v.* DEPARTAMENTO DE SERVICIOS SOCIALES y OFICINA CENTRAL DE ADMINISTRACIÓN DE PERSONAL, demandados y recurridos.

*Números:* CE-86-183 *Resueltos:* 28 de junio de 1991
CE-87-361

4

6

8

14

*Petra M. Rodríguez Torres* y *José Velaz Ortiz,* abogados de los peticionarios Ariel Aulet Lebrón *et al.; Rafael Ortiz Carrión, Procurador General, Rose Mary Corchado Lorent y Ricardo E. Alegría Pons, Procuradores Generales Auxiliares,* abogados de la recurrida Departamento de Servicios Sociales.

*Ana L. Torres Lupiañez,* abogada de los peticionarios Olga M. Velázquez Rivera *et al.; Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, y Miriam Álvarez Archilla, Procuradora General Auxiliar,* abogados de las recurridas Departamento de Servicios Sociales y Oficina Central de Administración de Personal; *Ramón Luis Juliá Ramos,* abogado de la interventora Junta de Apelaciones del Sistema de Administración de Personal.

El Juez Asociado Señor Alonso Alonso emitió la opinión del Tribunal.

Estos recursos nos brindan la oportunidad de interpretar diversas leyes relacionadas con la remuneración de los empleados públicos, así como aquellas que formulan el andamiaje administrativo y organizacional de las agencias

encargadas de poner en vigor dichas leyes. En especial, interpretamos las funciones cuasi legislativas de la Oficina Central de Administración de Personal (O.C.A.P.) al emitir cartas normativas sobre el particular y el alcance de la facultad de la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) para dejar sin efecto, alterar o modificar dichas cartas normativas en el ejercicio de sus funciones revisoras, cuasi judiciales, a nivel apelativo. Veamos los hechos que dan origen a estas controversias.

## I

*Los hechos*

En el recurso *Aulet Lebrón et al. v. Departamento de Servicios Sociales*, CE–86–183, los peticionarios son empleados de carrera del Departamento de Servicios Sociales (Servicios Sociales) a quienes éste se negó a computarles, como un aumento de sueldo recibido durante la vigencia de la estructura salarial suplantada, los treinta dólares ($30) otorgados por la Ley Núm. 83 de 4 de junio de 1983 (3 L.P.R.A. secs. 757-1d y 757-1f) para establecer sus sueldos básicos a los fines de ubicarlos en las nuevas escalas salariales que, a tenor con la Ley Núm. 84 de 4 de junio de 1983 (3 L.P.R.A. sec. 760e), entraron en vigor el 1ro de abril de 1984.

El señor Aulet Lebrón y otros acudieron ante J.A.S.A.P. para revisar tal decisión. Los empleados reclamaban tener derecho a que les fuera computado el aumento de treinta dólares ($30) dentro de su sueldo básico a los fines de ubicarlos en las nuevas escalas salariales.

La agencia, por su parte, sostenía que "el aumento general de treinta dólares ($30) concedido por la Ley Núm. 83, *supra*, era una extensión del beneficio o bonificación especial aprobado por la Ley Núm. 12 de 27 de agosto de

1982, separada del sueldo regular del empleado y sin relación alguna con la conformación de las escalas de sueldos correspondientes".

J.A.S.A.P. acogió la posición de Servicios Sociales y concluyó que los treinta dólares ($30) mensuales eran una bonificación o compensación especial, no recurrente, con el propósito de ofrecer un alivio salarial pasajero a los empleados públicos como antesala a la adopción del plan retributivo integral, de largo alcance y encaminado a mejorar las condiciones económicas del empleado público, que entró en vigor el 1ro de abril de 1984. Entendió que los treinta dólares ($30) no formaban parte del salario básico ni eran un aumento salarial acaecido durante la vigencia de la estructura salarial suplantada que debiera reconocerse en la nueva escala salarial. En consecuencia, desestimó la apelación instada por los peticionarios.

Inconformes con esta decisión, el señor Aulet y los otros empleados de Servicios Sociales acudieron en revisión de la determinación administrativa de J.A.S.A.P. ante el Tribunal Superior. Éste, mediante sentencia al efecto, denegó la revisión solicitada. De dicha sentencia recurren ante nos los peticionarios en este recurso.

Por otro lado, en *Velázquez Rivera, et al. v. Departamento de Servicios Sociales*, CE–87–361, las peticionarias cuestionan la acción tomada por Servicios Sociales de notificarles el cobro de ciertas sumas de dinero supuestamente pagadas de manera indebida por alegados errores cometidos por su división de nóminas al computar los salarios de aquéllas al momento en que entró en vigor el nuevo plan de retribución uniforme creado por la Ley Núm. 84, *supra.* Alegaba la agencia que indebidamente se incluyó el aumento general de treinta dólares ($30) concedido por la Ley Núm. 83, *supra,* para fines de establecer el salario básico del empleado en las nuevas escalas salariales. La agencia redujo el sueldo de dichas empleadas y les reclamó la devolución del dinero pagado atribuible a dicho error. Ade-

más, retuvo la diferencia en sueldo una vez corrigió dichos errores.

Inconformes, las peticionarias acudieron a J.A.S.A.P.

Las partes estipularon que Servicios Sociales está adscrito a O.C.A.P.; que ambas peticionarias eran empleadas de carrera de Servicios Sociales; que la peticionaria Olga M. Velázquez era Oficinista Dactilógrafa III, fue ascendida, mediante ascenso sin oposición, a Operadora de Equipo de Procesar Comunicaciones y Datos I el 16 de noviembre de 1983 y su sueldo, en ese momento, aumentó de quinientos setenta y un dólares ($571) a seiscientos diez dólares ($610) mensuales, y que la copeticionaria Aquilina Díaz se desempeñaba como Oficinista Dactilógrafa III.

A petición de ambas partes, se incluyó a O.C.A.P. como parte indispensable y coapelada.

*Las partes acordaron someter a la consideración de J.A.S.A.P., como controversias, si la implantación de los cambios de salario de estas empleadas fueron correctos o no y si procedía o no el cobro de las cantidades reclamadas por Servicios Sociales como pago de lo indebido.*

A base de las determinaciones de hecho, la Oficial Examinador concluyó que procedía el ajuste del salario de las peticionarias conforme a lo dispuesto en *Aulet Lebrón, et al. v. Departamento de Servicios Sociales*, supra, y a la fórmula adoptada por J.A.S.A.P. Específicamente, dispuso que en el caso de Doña Aquilina Díaz Reyes no podía ajustarse el sueldo "exactamente al mismo tipo retributivo (pasos) de la nueva escala con el que coincidía en la suplantada" (Informe Oficial Examinador, pág. 13), como había interpretado O.C.A.P. Dispuso, además, que no procedía el cobro de lo indebidamente pagado a estas empleadas por tratarse de un error de derecho. Recomendó, pues, que se ordenara el ajuste del sueldo de las peticionarias en conformidad con la fórmula adoptada, así como el reembolso de las sumas descontadas de los salarios por concepto de

pago indebido. Esta recomendación fue adoptada por J.A.S.A.P.

Inconformes con tal determinación, las empleadas peticionarias recurrieron al Tribunal Superior en revisión de la determinación administrativa de El foro de instancia (Hon. Juez Hermida) desestimó la petición de revisión. Al así hacerlo señaló, *inter alia*, que:

> Como ya hemos resuelto en por lo menos una ocasión anterior, se trata aquí *de interpretaciones conflictivas* entre JASAP y OCAP en un asunto de derecho sumamente técnico. En estos casos el estatuto le da jurisdicción apelativa a JASAP sobre OCAP, y es evidente que en el esquema estatutario *la decisión de JASAP tiene mayor jerarquía. Sin negar que la interpretación de OCAP pueda defenderse racionalmente, no encontramos motivo alguno para que este Tribunal intervenga con la interpretación, también racional, que dio JASAP en el caso.* (Énfasis suplido.) Apéndice H.

Acuden ante nos las peticionarias. Sostienen que la decisión de J.A.S.A.P. establece un sistema de retribución paralelo al de O.C.A.P. sin autoridad para ello y en contravención a la reglamentación adoptada por ésta. Por la importancia de las cuestiones planteadas y el gran interés público que reviste a la legislación de personal del servicio público, decidimos consolidar ambos recursos y revisar. Las partes han comparecido. Resolvemos.

## II

*Las controversias*

La controversia común a ambos recursos es si los treinta dólares ($30) otorgados el 1ro de octubre de 1983 a los empleados públicos por virtud de la Ley Núm. 83, *supra*, es un aumento que *debe considerarse como parte del sueldo de dichos empleados* al 1ro de abril de 1984 para fines de efectuar el ajuste correspondiente en las nuevas escalas salariales que entraron en vigor en esa fecha en

virtud de la Ley Núm. 84, *supra, o si por el contrario sólo fue una bonificación o compensación especial no recurrente.*

En el recurso *Velázquez Rivera, et al. v. Departamento de Servicios Sociales*, supra, se presenta una cuestión adicional: ¿cómo se implanta en las nuevas escalas de retribución lo dispuesto en el Art. 6(c)(10) de la Ley Núm. 84, *supra*, 3 L.P.R.A. sec. 760e(c)(10), y en el inciso (B)(3) de la Carta Normativa Especial Núm. 2-83 de 30 de septiembre de 1983 con relación a los aumentos obtenidos en las escalas de retribución suplantada?

*Estas controversias exigen que delimitemos la composición estructural y funcional, así como la naturaleza y el alcance de las funciones de los dos (2) organismos públicos encargados de poner en vigor la política pública retributiva del Estado Libre Asociado: O.C.A.P. y J.A.S.A.P. En particular resolvemos si J.A.S.A.P. tiene autoridad en ley para dejar sin efecto, alterar, suprimir en todo o en parte, o modificar las cartas normativas emitidas por O.C.A.P. en el ejercicio de sus funciones.*

Delimitados tales contornos podemos pasar juicio, desde su justa perspectiva, sobre la interpretación que cada una de estas agencias ha hecho de las leyes de retribución en controversia.

■ De entrada reiteramos el alto interés público que reviste la legislación reguladora del empleo público y, en especial, la que reglamenta la retribución salarial de estos servidores. *Cf. Torres Solano v. P.R.T.C.*, 127 D.P.R. 499 (1990); *Díaz González v. Tribunal Superior*, 102 D.P.R. 195 (1974).

### III

*Las funciones de O.C.A.P.*

■ Mediante la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 del 14 de octubre de 1975 (3

L.P.R.A. sec. 1301 *et seq.*), comúnmente conocida como la Ley de Personal, la Asamblea Legislativa creó un sistema unitario de administración para el personal del servicio público. El sistema comprende una Administración Central, 3 L.P.R.A. sec. 1342; ciertos Administradores Individuales, 3 L.P.R.A. sec. 1343, y excluye de la aplicación de la ley a determinadas entidades públicas, 3 L.P.R.A. sec. 1338. *Aut. de Puertos v. Mun. de San Juan*, 123 D.P.R. 496 (1989).

El estatuto creó, a su vez, la Oficina Central de Administración de Personal (O.C.A.P.), a la cual le delegó una gama de funciones consustanciales con la administración de personal de las agencias públicas comprendidas dentro de la Administración Central. J.R. Feijoó, *La Administración de Personal*, San Juan, O.C.A.P., 1980, pág. 43. La Asamblea Legislativa, en el texto claro de la ley, delegó en O.C.A.P. las *funciones cuasi legislativas* que en antaño ostentaba la Junta de Personal. 3 L.P.R.A. secs. 1323, 1393 y 1394. El historial legislativo de la Ley de Personal resulta revelador en este extremo:

> ... [L]as facultades para *reglamentar* y para supervisar la aplicación del Principio de Mérito que ahora están asignadas a la Junta de Personal, *se considerarán transferidas al Director de la Oficina Central*. (Énfasis suplido.) Informe Conjunto de las Comisiones de Gobierno y Derechos Civiles del Senado de Puerto Rico sobre el P. del S. 1428 (que luego se convirtió en la Ley de Personal del Servicio Público de Puerto Rico) de 30 de septiembre de 1975, pág. 20.

Conforme a las disposiciones expresas de la Ley de Personal, en el descargo de las funciones cuasi legislativas que le fueron delegadas, O.C.A.P. ostenta la facultad de promulgar todas aquellas *normas generales* sobre la administración y aplicación del principio de mérito en el Sistema de Personal del Servicio Público (Sistema de Personal), incluso las relacionadas con el reclutamiento, la

retención, la retribución, las condiciones de trabajo, etc. de dicho sistema de personal. Ello conlleva la facultad de aprobar, promulgar, enmendar y derogar los reglamentos necesarios para la instrumentación de su ley habilitadora: la referida Ley de Personal.

O.C.A.P. también es la agencia responsable de asesorar al Ejecutivo y a la Rama Legislativa en todo lo relativo a la administración de su personal. 3 L.P.R.A. sec. 1323. Mantiene, además, una relación normativa con respecto a los Administradores Individuales. Esta relación abarca la aprobación de reglamentos adoptados por dichos Administradores Individuales así como el ofrecimiento de ayuda técnica en la preparación, la redacción y el diseño de los mismos. En el ejercicio de esta autoridad, puede declarar la nulidad de cualquier disposición reglamentaria contraria a la Ley de Personal o al Reglamento de Personal: Áreas Esenciales al Principio de Mérito, aprobado por dicha oficina. 3 L.P.R.A. sec. 1347; *Delgado Rivera v. Alcalde de Carolina*, 109 D.P.R. 5 (1979).

O.C.A.P. es, además, el organismo administrativo encargado de asesorar a las agencias excluidas para que los reglamentos particulares que éstas adopten incorporen y resguarden el principio de mérito: pilar que sirve de norte a todo nuestro Sistema de Personal. *Torres Solano v. P.R.T.C.*, supra; *Aut. de Puertos v. Mun. de San Juan*, supra.

*En síntesis, O.C.A.P. tiene unas funciones predominantemente normativas y reguladoras.* En segundo plano lleva a cabo funciones de capacitación, orientación y asesoramiento técnico a todos los empleados públicos,a todos los patronos públicos y a la ciudadanía en general, entre otros.

La Ley de Personal faculta a O.C.A.P. para "[r]eglamentar ... lo relativo a la Administración Central",

3 L.P.R.A. sec. 1323(5), y para "[a]probar y promulgar reglas para instrumentar las relaciones entre la Oficina y los Administradores Individuales", 3 L.P.R.A. sec. 1323(3). De tal autoridad expresa se desprende la facultad de O.C.A.P. para emitir cartas normativas con fuerza de ley para los componentes de la Administración Central y los Administradores Individuales. Claro está, las cartas normativas que O.C.A.P. emita en el ejercicio de sus funciones cuasi legislativas no pueden estar en conflicto con la ley o con la jurisprudencia vinculante en la materia que intente reglamentar, pues el poder de reglamentación delegado a la agencia no la faculta para sustituir el criterio legislativo o judicial plasmado en el estado de derecho vigente. *A.P.I.A.U., Inc. v. Srio. de Hacienda,* 100 D.P.R. 173 (1971); *Rosario Mercado v. San Juan Racing Assn.,* 94 D.P.R. 634 (1967); *Rivera Maldonado v. Autoridad sobre Hogares,* 87 D.P.R. 453 (1963); *Ex parte Irizarry,* 66 D.P.R. 672 (1946).

■■■ *La Ley de Retribución Uniforme de 1974, Ley Núm. 111 de 8 de julio de 1974 (3 L.P.R.A. ant. sec. 759 et seq.), delegó en O.C.A.P. la responsabilidad de administrar el plan de retribución uniforme, para lo cual le cencedió la facultad de adoptar toda aquella reglamentación necesaria para lograr los propósitos de la misma.* 3 L.P.R.A. ants. secs. 759j y 759m.

## IV

*Las funciones de J.A.S.A.P.*

■■■ La Ley de Personal creó, además, la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.), 3 L.P.R.A. sec. 1381 *et seq.* En *Díaz Marín v. Mun. de San Juan,* 117 D.P.R. 334, 337 y 338 (1986), delimitamos los contornos de la estructura y de las funciones de J.A.S.A.P.; señalamos:

La Junta de Apelaciones del Sistema de Administración de

Personal fue creada como un organismo colegiado e independiente. ... *La intención legislativa fue claramente la creación de un tribunal apelativo a nivel administrativo con poderes adjudicativos, especializado en asuntos de personal, que fiscalizara rápida y efectivamente las decisiones de los administradores individuales y la Oficina Central de Administración de Personal.* (Énfasis suplido.) Véase, además, *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988).

El texto de la ley claramente establece su *jurisdicción apelativa a nivel administrativo con funciones cuasi judiciales*. El historial legislativo así también lo demuestra. Véase Informe Conjunto de las Comisiones de Gobierno y Derechos Civiles del Senado de Puerto Rico sobre el P. del S. 1428 de 30 de septiembre de 1975, pág. 29.

La Sec. 7.14 de la Ley de Personal, 3 L.P.R.A. sec. 1394, establece:

Con sujeción a las excepciones que se establecerán más adelante en este Capítulo, *se podrá apelar de las acciones o decisiones de la Oficina Central*, de los Administradores Individuales, y de las autoridades nominadoras, en los casos y por las personas que se especifican a continuación:

(1) En casos de destitución o suspensión de empleo y sueldo *por un empleado de carrera* que esté dentro del Sistema de Personal, *o cuando alegue que una acción o decisión que le afecta viola cualquier derecho que se le conceda a virtud de las disposiciones de este Capítulo, del reglamento que se apruebe para instrumentar este Capítulo, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a este Capítulo.* (Énfasis suplido.)

En específico, y en lo aquí pertinente, son apelables ante J.A.S.A.P. las acciones o las decisiones de la Administración Central cuando el empleado alega que una acción o una decisión de su patrono o de O.C.A.P. viola cualquier derecho que se le concede en virtud de la Ley de Personal. Como tribunal administrativo apelativo, J.A.S.A.P. revisa tales decisiones conforme a sus facultades de naturaleza adjudicativa de casos y de controversias,

aplicando a los hechos concretos del caso las normas y el derecho vigente —*López Vives v. Policía de P.R.*, 118 D.P.R. 219, 229–230 (1987)— para determinar el remedio apropiado. *Vélez Ruiz v. E.L.A.*, 111 D.P.R. 752, 756 (1981).

*Ahora bien, ¿puede J.A.S.A.P., en el ejercicio de sus funciones adjudicativas de casos y de controversias, dejar sin efecto, alterar o modificar la reglamentación contenida en una carta normativa promulgada por O.C.A.P. en el ejercicio de sus facultades cuasi legislativas? ¿Cuál es el alcance de la revisión cuasi judicial de J.A.S.A.P. sobre el producto de la función cuasi legislativa de O.C.A.P.?*

El poder de reglamentación de O.C.A.P. no es ilimitado o libre de revisión judicial. Los reglamentos o cartas normativas que O.C.A.P. apruebe deben estar autorizados por la ley, caer dentro del marco del poder de reglamentación delegado, cumplir con las normas procesales de su ley orgánica y/o de las leyes especiales dispuestas para la aprobación de tal reglamentación y, finalmente, no pueden ser arbitrarios ni caprichosos. *Cf. M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319, 326 (1987); *Luan Investment Corp. v. Román*, 125 D.P.R. 533 (1990). La revisión cuasi judicial de J.A.S.A.P. sobre las actuaciones cuasi legislativas de O.C.A.P. se debe encaminar a revisar si en la aprobación e implantación de tal reglamentación a casos particulares se cumplió con esos criterios. En otras palabras, J.A.S.A.P. puede, como tribunal administrativo apelativo, pasar juicio sobre la validez de una norma o regla aprobada por O.C.A.P. en su aplicación a un caso particular ante su consideración cuando el empleado afectado levante el planteamiento, pero dicho juicio debe circunscribirse a determinar si en la aprobación e implantación al caso particular se cumple con esos criterios.

*En resumen, el análisis de las normas antes citadas evidencia el propósito legislativo de delegarle a O.C.A.P. el poder de reglamentación, mientras que a*

*J.A.S.A.P. le otorga una serie de poderes adjudicativos. No es función de J.A.S.A.P. reglamentar o establecer política pública mediante normas generales o reglamentación en el área de administración de personal.* La nueva Ley de Personal deslindó y separó claramente las funciones cuasi adjudicativas y cuasi judiciales que bajo la antigua Ley de Personal poseían la Junta y la Oficina de Personal conjuntamente. El legislador suplantó ese es- quema, en el cual dichas Junta y Oficina de Personal se consideraban meras divisiones de un mismo sistema administrativo con poderes adjudicativos y de reglamentación, por uno donde se limitaron de forma clara y expresa las funciones y facultades de cada organismo. Véase Informe Conjunto sobre el P. del S. 1428, *supra,* págs. 29–30.

Tal limitación de funciones y facultades no significa que son organismos totalmente independientes el uno del otro. La intención legislativa fue que J.A.S.A.P. fiscalizara las normas promulgadas por O.C.A.P. mediante la resolución de los planteamientos que los empleados levantaran en cada caso con relación a tales actuaciones de O.C.A.P.[1] *Aunque limitado al caso ante su consideración, sin valor de precedente, la decisión de J.A.S.A.P. puede invalidar, modificar, enmendar o alterar las normas promulgadas por O.C.A.P. siempre que su actuación no exceda el estándar antes señalado de revisión judicial sobre la reglamentación promulgada por el organismo con poderes cuasi legislativos. Cf. M. & B.S., Inc. v. Depto. de Agricultura,* supra.

Delimitado el marco conceptual jurídico que define el

---

[1] En el Informe Conjunto de las Comisiones de Gobierno y Derechos Civiles del Senado de Puerto Rico sobre el P. del S. 1428 de 30 de septiembre de 1975, pág. 30, se señaló:

"Se entiende que en el desempeño de su función apelativa, la nueva Junta tendrá oportunidad *de evaluar la aplicación del Principio de Mérito y de hacer señalamientos al Director de la Oficina Central para mejorar* las reglas, reglamentos y normas que éste haya aprobado ...." (Énfasis suplido.)

ámbito jurisdiccional de ambos organismos, entramos a considerar sus actuaciones en los casos de autos.

## V

En ambos recursos ante nos, tanto O.C.A.P. como J.A.S.A.P. (y el Departamento de Servicios Sociales, siguiendo la Carta Normativa Especial Núm. 2-83 promulgada por O.C.A.P.) determinaron que el aumento de treinta dólares ($30) concedido a los recurrentes en virtud de la Ley Núm. 83, *supra*, era una *bonificación* o *compensación especial no recurrente* que no debía computarse como parte del sueldo de dichos empleados para propósitos de efectuar los ajustes correspondientes de sueldo en las nuevas escalas salariales que entraron en vigor el 1ro de abril de 1984 en virtud de la Ley Núm. 84, *supra*.[2]

Se impone que examinemos la legislación en controversia a los fines de interpretar su alcance en el caso ante nos. Al hacerlo, no sólo debemos examinar la cronología de las leyes de retribución concernidas, sino también otras leyes análogas *in pari materia*, ya que las leyes referentes a un mismo asunto deben ser interpretadas refiriéndose las unas a las otras para que lo que es claro en un precepto pueda explicar lo dudoso en otro. Art. 18 del Código Civil, 31 L.P.R.A. sec. 18. Véanse: *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669 (1987); *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589 (1989); *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733 (1989). Para descubrir la intención legislativa de estas leyes es necesario, además, examinar el

---

[2] Esta controversia presentada por los empleados ante la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) no desembocó en un conflicto entre la Oficina Central de Administración de Personal (O.C.A.P.) y J.A.S.A.P., puesto que esta última sostuvo la validez de la norma pautada por O.C.A.P. en su Carta Normativa Especial Núm. 2-83 de 30 de septiembre de 1983.

historial legislativo y el propósito social de tales estatutos, puesto que el fin principal de la interpretación estatutaria es hacer que prevalezca el propósito legislativo y evitar interpretaciones que conduzcan a resultados irrazonables —*García Pagán v. Shiley Caribbean, Etc.*, 122 D.P.R. 193 (1988)— que nos aparten del problema humano cuya solución persiguen. *Morales v. Adm. Sistemas de Retiro*, supra. Acometemos esa tarea.

## VI

*La legislación sobre retribución de empleados públicos aquí en controversia (Ley Núm. 345 de 12 de mayo de 1947)*

Uno de los primeros esfuerzos de la Asamblea Legislativa para adoptar un plan de retribución integral quedó plasmado en la Ley Núm. 345 de 12 de mayo de 1947 (3 L.P.R.A. ants. secs. 641–678). Esta legislación, de avanzada en su tiempo, establecía un plan de retribución uniforme que buscaba la equidad en la retribución a base de la naturaleza e importancia de las funciones que el empleado público realizaba en su puesto. Sin embargo, los cambios en las condiciones económicas y sociales que desde entonces sufrió nuestro pueblo, y la proliferación y diversificación de los servicios públicos que exigía el país frente al papel activo que el Gobierno se impuso, tuvieron como consecuencia la necesidad de revisar las condiciones salariales de los servidores públicos. Otro factor determinante en el impulso hacia la revisión de las estructuras salariales fue la marcada diferencia de salarios entre el sector privado y las corporaciones públicas, *vis-à-vis* el sector público central. *Cf.* Exposición de Motivos de la Ley Núm. 84, *supra*, 1983 Leyes de Puerto Rico 199.

*La Ley Núm. 111 de 8 de julio de 1974*

La retribución de los empleados públicos volvió a ser atendida por la Asamblea Legislativa mediante la aprobación de la Ley de Retribución Uniforme, Ley Núm. 111, *supra*. Dicha ley revisó el plan de retribución, dispuso para la revisión de las escalas de retribución e introdujo nuevos enfoques y mejoras en los mecanismos para la administración del plan de retribución, entre otros.

La Ley Núm. 111, *supra*, fue aprobada con anterioridad a la citada Ley de Personal. Como vimos, la Ley de Personal trajo cambios estructurales en los mecanismos organizacionales que tenían a su cargo la administración del personal del servicio público. Se hacía imperativo que la Asamblea Legislativa actuara para eliminar cualquier incongruencia que pudiera existir entre la Ley de Personal y la Ley de Retribución Uniforme.

*La Ley Núm. 89 de 12 de julio de 1974*

Con el propósito de uniformar y armonizar las disposiciones de la Ley de Retribución Uniforme de 1974 con las de la Ley de Personal (de 1975) y eliminar las incongruencias entre ambas leyes, se aprobó la Ley Núm. 89 de 12 de julio de 1979, Ley de Retribución Uniforme de 1979 (3 L.P.R.A. sec. 760 *et seq.*) Véanse: Informe de las Comisiones de Hacienda y Gobierno sobre el P. de la C. 961 de 10 de junio de 1979; Exposición de Motivos de la Ley Núm. 89, *supra*, 1979 Leyes de Puerto Rico 224. Además, el propósito esencial de la Ley Núm. 89, *supra*, era alcanzar, en materia de retribución, la uniformidad y agilidad necesarias para proporcionar un trato justo e imparcial a todos los empleados públicos.

El Art. 2 de la Ley Núm. 89, *supra*, 3 L.P.R.A. sec. 760a, específicamente le encomendó a O.C.A.P. y a cada autoridad nominadora —en el caso de los Administra-

dores Individuales— que adoptaran pla nes de retribución *conforme al reglamento que O.C.A.P. adoptara para instrumentar dicha ley.* A esos efectos, la Asamblea Legislativa estableció unas normas adicionales que servían de guía y limitaban el poder que había sido delegado. *López v. Junta Planificación*, 80 D.P.R. 646 (1958). Además, le confirió la facultad de "[r]ealizar estudios de retribución en los distintos sectores de la economía que envuelven los niveles y las tendencias salariales así como otras formas de compensación tales como incentivos y beneficios marginales". 3 L.P.R.A. sec. 760b(5).

La Ley Núm. 89, *supra*, estableció, además, escalas de retribución para las clases de puestos en el servicio de carrera de la Administración Central. 3 L.P.R.A. sec. 760e. *Dispuso que el Director de O.C.A.P., con la aprobación del Gobernador, "[c]uando las circunstancias lo justifiquen y los recursos fiscales lo permitan, … podrá reajustar el cuadro de la estructura contenida en esta sección, eliminando no más de tres escalas y añadiendo no más de tres".* (Énfasis suplido.) 3 L.P.R.A. sec. 760e(c)(4).

Finalmente, dicha ley autorizó a O.C.A.P. a conceder aumentos de sueldo por años de servicio, a extender las escalas salariales —añadiendo diversos tipos de aumento— así como a establecer otros métodos de compensación bajo los términos establecidos por la mencionada ley. 3 L.P.R.A. sec. 760f. Dispuso, además, que los fondos necesarios para llevar a cabo los propósitos de la ley serían consignados en el presupuesto general de gastos.

*La Ley Núm. 12 de 27 de agosto de 1982*

La primera concretización monetaria para el empleado público, a corto plazo y con antelación al plan integral de retribución a largo alcance, se materializó en la Ley Núm. 12 de 27 de agosto de 1982 (3 L.P.R.A. sec.

757-1a *et seq.*). La Exposición de Motivos de dicho estatuto disponía, entre otros:

Uno de los propósitos de la presente ley es otorgar *una bonificación o compensación especial no recurrente* a los maestros y demás personal docente del Departamento de Instrucción Pública, el cuerpo de la Policía y *empleados públicos de las agencias de la Administración Central* y de los Administradores Individuales excluyendo los empleados municipales. *Con* [sic] *esta bonificación o compensación especial tiene el propósito de ofrecer un alivio salarial a los empleados públicos, con antelación a la adopción de un plan retributivo integral a largo alcance. El otro objetivo fundamental de esta ley es el de mejorar la situación salarial de los empleados públicos mediante la adopción de un plan retributivo integral a largo alcance cuya etapa inicial comenzará el 1ro. de octubre de 1983 con la concesión de determinados aumentos de sueldos.* (Énfasis suplido.) 1982 Leyes de Puerto Rico 255.

■ La ley adelantaba las normas generales o guías que delimitaban la facultad legislativa concedida a O.C.A.P. para hacer efectivos los aumentos de sueldo —a largo alcance— del plan integral. Véase Exposición de Motivos de la Ley Núm. 12, *supra.*

■ El Art. 1 de la citada Ley Núm. 12 (3 L.P.R.A. sec. 757-1a) *recalcaba el carácter transitorio del aumento o bonificación especial.* Al respecto disponía:

ARTICULO 1.—POLITICA PUBLICA
Los empleados públicos de la Rama Ejecutiva que forman parte del Sistema de Personal creado a virtud de la Ley de Personal del Servicio Público, así como los que forman parte del sistema autónomo de la Rama Judicial, *merecen recibir algún alivio económico especial como medida transitoria en lo que la situación económica permite revisar las correspondientes escalas de sueldos vigentes.* (Énfasis suplido.) 1982 Leyes de Puerto Rico 256.

En la pág. 1 del Informe de la Comisión de Hacienda del Senado sobre el P. del S. 667 de 30 de julio de 1982 —que luego se convirtió en la Ley Núm. 12, *supra*— encon-

tramos la justificación legislativa para este alivio económico al empleado público.

> Esta acción obedece a que, *a la luz de la situación crítica por la que atraviesa el país,* estudios realizados por la Asamblea Legislativa demuestran que los aumentos generales en remuneración que se le han concedido a los empleados públicos durante los pasados seis (6) años, *no han sido suficientes para mantener el poder adquisitivo de los sueldos básicos que devengaban para el 1ro de julio de 1977.* (Énfasis suplido.)

De lo expresado anteriormente se desprende, con meridiana claridad, que la intención legislativa al aprobar la Ley Núm. 12, *supra, era conceder una bonificación o compensación especial no recurrente a los empleados públicos de la Administración Central* y de los Administradores Individuales —con la exclusión de los empleados municipales y aquellos que negociaron convenios colectivos— para ofrecerle a esta clase un alivio salarial con antelación al plan retributivo integral a largo alcance cuya etapa inicial estaba programada para el 1ro de octubre de 1983. Este alivio económico *era de carácter transitorio* y estaba sujeto a que la situación económica y fiscal del Estado permitiera revisar las escalas salariales entonces vigentes.

Era además la intención del legislador que, de no recibirse del Gobernador legislación para implantar el plan de retribución uniforme, los empleados cubiertos por la Ley Núm. 12, *supra,* continuaran recibiendo hasta el 1ro de octubre de 1983 el aumento expresado en la ley.

El Art. 3 de la Ley Núm. 12, *supra,* 3 L.P.R.A. sec. 757-1c, disponía los distintos aumentos que se les concederían a los empleados cubiertos. Según este artículo, el de los empleados aquí en controversia sería de treinta dólares ($30).

El Art. 4 de la Ley Núm. 12, *supra,* 3 L.P.R.A. sec. 757-1d, adelantaba lo que debería ocurrir a partir del 1ro de octubre de 1983. Los aumentos de cuarenta y cinco dólares

($45), treinta y cinco dólares ($35) y treinta dólares ($30) de los que habla la ley en este artículo serían *aumentos fijos y parte del sueldo regular* de cumplirse la condición suspensiva de que el Gobernador no sometiera a la Asamblea Legislativa la legislación correspondiente para la revisión de las escalas retributivas. Pero eso no fue lo que ocurrió.

### La Ley Núm. 83 de 4 de junio de 1983

En lugar de un tranque entre el Poder Ejecutivo y el Poder Legislativo sobre la legislación para la revisión de las escalas retributivas —lo que habría activado el Art. 4 de la Ley Núm. 12, *supra,* y en lugar de la revisión de las escalas retributivas como primera etapa del plan integral de largo alcance se habría incorporado el aumento de sueldo permanente dispuesto en dicho artículo— se aprobó la Ley Núm. 83 de 4 de junio de 1983 (3 L.P.R.A. secs. 757-1d y 757-1f). En la Exposición de Motivos de dicha ley, la Asamblea Legislativa reconoció la siguiente situación fiscal en las arcas del Estado:

Al aprobarse la *Ley Núm. 12,* la situación fiscal del Gobierno no permitía incurrir en los altos costos que conllevaría la adopción de la primera etapa del Plan Integral para Mejorar la Situación Retributiva de los Empleados Públicos, por lo *que se optó* por autorizar *la concesión de una bonificación o compensación especial no recurrente que terminaría en septiembre de 1983,* dando paso entonces a la adopción, el primero de octubre de 1983, de la primera etapa del mencionado plan integral.

La situación económica del Gobierno del Estado Libre Asociado de Puerto Rico *no ha variado,* lo que hace necesario *posponer* la implantación de *la primera etapa del plan integral de retribución para una fecha futura. La posposición aquí propuesta, por lo tanto, daría un mayor margen de tiempo, en espera de que mejore la situación fiscal y se pueda cumplir a cabalidad con el compromiso económico que implicaría la adopción total de la primera etapa del estudio integral de retribución.*

No obstante, siguiendo la política retributiva establecida encaminada hacia el mejoramiento económico de los servidores

públicos, dentro de las posibilidades fiscales, se otorgarán aumentos de sueldo a los empleados hasta el 1ro. de abril de 1984, fecha en que se implantará la primera etapa del estudio integral de sueldos. (Énfasis suplido.) 1983 Leyes de Puerto Rico 196–197.

Tanto en el informe de la Comisión de Hacienda del Senado como en el de la Cámara de Representantes sobre el P. de la C. 805 —que luego se convirtió en la Ley Núm. 83, *supra*— se expresó:

Al aprobarse la Ley Núm. 12 de 27 de agosto de 1982, fue la intención clara y expresa de la Asamblea Legislativa que efectivo el día 1ro. de octubre de 1983 entrara en vigor la primera etapa del Plan Integral, a largo alcance, encaminado a mejorar las condiciones económicas de los empleados públicos. Mediante la aprobación de esta Ley aseguramos una *bonificación especial* para maestros de $45.00 y $35.00 para los policías, comenzando en enero de 1983. Los empleados cubiertos por la Administración Central de Personal, Administradores Individuales y la Rama Judicial recibirán $50.00 en el próximo mes de junio, $80.00 en julio y $30.00 subsiguientemente hasta el primero de octubre, fecha en que expresamos que comenzaría la primera etapa del antes mencionado Plan Integral de retribución.

No obstante de [sic] lo anteriormente expuesto, durante la presente Sesión Ordinaria, *el Gobernador sometió a la consideración de la Asamblea Legislativa una serie de medidas encaminadas a proveer aumentos de sueldos a los servidores públicos. Estas medidas tienen el propósito de instrumentar la primera fase del Plan de Retribución Integral para servidores públicos a ser efectivo el día 1ro. de abril de 1984. Por consiguiente, se hace mandatorio enmendar la Ley Núm. 12, antes citada, para extender la vigencia de la bonificación especial, ya legislada, hasta el día 1ro. de abril de 1984, fecha en que entrará en vigor el plan de retribución. La presente medida tiene ese propósito.* (Énfasis suplido.) Informe sobre el P. de la C. 805 de 23 de abril de 1983, págs. 1–2.

■ *Con más diáfana claridad no podía expresarse la intención legislativa de la Ley Núm. 83, supra: extender la bonificación especial no recurrente dispuesta en la Ley Núm. 12, supra, desde el 1ro de octubre de 1983 hasta el 31*

*de marzo de 1984, ya que al 1ro de abril de 1984 se adop-*
*taría la primera etapa del plan integral de retribución*
*uniforme.* Para entonces se esperaba que la situación fiscal
del Gobierno hubiera mejorado.

Finalmente, la Asamblea Legislativa aprobó la Ley
Núm. 84 de 4 de junio de 1983 (3 L.P.R.A. sec. 760e).

### *La Ley Núm. 84 de 4 de junio de 1983*

La Ley Núm. 84, *supra*, entró en vigor el 1ro
de abril de 1984. Veáse 1983 Leyes de Puerto Rico 205. La
misma enmendó la vigencia de la Ley de Retribución Uni-
forme de 1979, implantó nuevas estructuras retributivas
para los empleados de carrera y de confianza de la Admi-
nistración Central, dispuso los fondos necesarios para ello
y reglamentó todo lo relativo al ajuste de sueldo de los
empleados mediante el establecimiento de las Reglas de
Interpertación y de Administración de la Estructura
Salarial. Las estructuras retributivas de dicha ley están
desarrolladas *sobre una base porcentual y representan el*
*producto de los estudios sobre retribución ordenados por la*
*Ley Núm. 89, supra.* La estructura salarial implantada
adoptó para el servicio de carrera unas treinta y nueve (39)
escalas salariales con un sueldo mínimo, siete (7) tipos in-
termedios y un sueldo máximo.

### *Conclusión del análisis de la legislación*

Del análisis del historial legislativo, su contexto
social y económico, así como del texto de las leyes antes
reseñadas, surge meridianamente claro cuál fue la inten-
ción legislativa al concederle el aumento de treinta dólares
($30) mensuales el 1ro de octubre de 1983 a los empleados
públicos cubiertos por la Ley Núm. 83, *supra. Dicho au-*
*mento general fue la extensión de la bonificación o compen-*
*sación especial no recurrente dispuesta en la Ley Núm. 12,*
*supra, con el propósito de ofrecer un alivio temporal, tran-*

*sitorio y pasajero a dichos empleados con antelación a la adopción de la primera fase del plan de retribución uniforme, que a largo alcance se inició con la aprobación de las nuevas escalas salariales mediante la Ley Núm. 84, supra. Bajo ningún concepto el legislador intentó que dicho aumento fuera considerado permanente para propósitos de efectuar el ajuste correspondiente en las nuevas escalas salariales aprobadas en virtud de la mencionada Ley Núm. 84.* La situación económica y fiscal del Gobierno obligó a la Asamblea Legislativa, en aquel entonces, a posponer la primera etapa del plan de retribución integral hasta el 1ro de abril de 1984.

El legislador intentó, con la aprobación de la Ley Núm. 83, *supra*, continuar aliviando la situación económica de los empleados públicos mediante *un mecanismo transitorio* de duración predeterminada hasta tanto entraran en vigor las nuevas escalas de retribución. Estas nuevas escalas, en sí mismas, absorbían la bonificación de treinta dólares ($30), ya que todas conllevarían un incremento en el sueldo de por lo menos treinta dólares ($30) mensuales para los empleados públicos cubiertos por la Ley de Personal. *Cf.* Art. 4 de la Ley Núm. 12, *supra*, según enmendado por la Ley Núm. 83, *supra*.

Por lo tanto, no puede sostenerse la posición de los recurrentes en ambos recursos en el sentido de que había que considerar esa bonificación de treinta dólares ($30) como un aumento permanente que debía ser añadido a su sueldo regular para fines de obtener su sueldo base y para situarlos en las correspondientes nuevas escalas salariales. La razón es que la nueva escala ya reconocía de antemano ese aumento por disposición de la ley. Art. 4 de la Ley Núm. 12, *supra*.

De ahí que al interpretar el aumento transitorio general concedido por la Ley Núm. 83, *supra*, y en el ejer-

cicio del poder cuasi legislativo que le fue delegado por la Asamblea Legislativa a O.C.A.P., esta última emitió la Carta Normativa Especial Núm. 2-83 de 30 de septiembre de 1983 que disponía, en lo aquí pertinente:

A. Normas para la concesión del aumento de sueldo general a partir del 1ro. de octubre de 1983.

1. Los empleados públicos de la Rama Ejecutiva que forman parte del sistema de personal creado a virtud de la Ley de Personal del Servicio Público de Puerto Rico recibirán un aumento de $30 mensuales. Los membros del Cuerpo de la Policía recibirán un aumento de $35 mensuales. Los maestros y demás personal docente recibirán un aumento de $45 mensuales. Dichos aumentos se concederán a los referidos empleados, sin distinción de status y categoría.

2. *En esta ocasión se trata de un aumento general a los empleados. Por consiguiente, el mismo no altera de forma alguna, las escalas de retribución vigentes.*

3. *Cuando se conceda el aumento de sueldo que proceda ($30, $35 y $45) no se efectuarán ajustes en los sueldos, independientemente de que éstos no coincidan con los tipos retributivos de las escalas.*

4. *Este aumento se concederá sobre el sueldo regular que esté devengando el empleado, aún* [sic] *cuando el mismo sobrepase el máximo de la escala.* Los diferenciales no forman parte del sueldo. Por lo tanto, no se tomarán en consideración al efectuar el aumento de sueldo. (Énfasis suplido.) Apéndice IX, págs. 46–47.

■ En vista de que a O.C.A.P. le fue concedido el poder de reglamentación en materia de retribución, estas disposiciones claramente caen bajo el poder delegado. *Cf.* 3 L.P.R.A. sec. 760b(6)(1).

■ Finalmente, visto el historial legislativo así como el texto claro de las citadas Leyes Núms. 89 de 1979; 12 de 1982, y 83 y 84 de 1983, *concluimos* que tales disposiciones reglamentarias no son arbitrarias o caprichosas y que, además, la interpretación de las mismas hecha por J.A.S.A.P. —en cuanto a la controversia común a ambos recursos— se ajusta a la ley y a las facultades y funciones cuasi judicia-

les delegadas por la Asamblea Legislativa a dicho organismo.

■ Lo hasta aquí resuelto dispone de la controversia común a ambos recursos: la bonificación de treinta dólares ($30), extendida por la citada Ley Núm. 83 a los empleados públicos cubiertos, *no* fue un aumento de sueldo recibido durante la vigencia de la estructura salarial suplantada a los fines de ser añadido a su salario ni tenía que ser así reconocido al implantarse las nuevas escalas salariales.

Réstanos examinar la controversia adicional suscitada por la decisión de J.A.S.A.P. en el recurso *Velázquez Rivera et al. v. Departamento de Servicios Sociales*, supra.

## VII

■ La Ley Núm. 84, *supra*, dispuso como una de las reglas de interpretación y administración de la nueva estructura salarial que:

> (10) Al adoptarse la nueva estructura salarial, los sueldos de los empleados se ajustarán de la siguiente forma:
> El que está bajo el mínimo irá al nuevo tipo mínimo. *El salario de aquellos empleados que devenguen sueldos superiores al tipo mínimo de la escala por motivo de haber recibido aumentos de sueldo durante la vigencia de la anterior estructura, se ajustará de modo que se reconozcan todos los aumentos de sueldo recibidos durante la vigencia de la estructura salarial suplantada.* Art. 6(c)(10), 3 L.P.R.A. sec. 760e(c)(10).

■ A tenor con ese mandato de la ley, O.C.A.P. dispuso reglas en la Carta Normativa Especial Núm. 2-83 para implantar el ajuste de sueldos de la anterior estructura satarial a la nueva. *En síntesis y en términos generales, dicha carta normativa tiene el efecto de transferir al empleado a la misma escala y tipo que ocupaba bajo la estructura suplantada por la nueva ley.* Veamos esto en mayor detalle.

Una evaluación cuidadosa de las disposiciones contenidas en la Ley Núm. 84, *supra*, demuestra que el propósito del citado Art. 6(c)(10) era que al entrar en vigor la nueva estructura salarial los empleados retuvieran aquellos aumentos de sueldo recurrentes que, por vía de ascensos, reconocimiento de pasos, etc., se les había otorgado bajo la estructura retributiva suplantada. En todos los casos el sueldo del empleado aumentaría por lo menos treinta dólares ($30) mensuales, pero el aumento a empleados que hubieran recibido aumentos bajo la estructura suplantada sería mayor puesto que el reconocimiento del aumento, ajustado al mismo tipo retributivo de la nueva estructura que coincidiera con el de la suplantada, siempre conllevaba un aumento superior a los treinta dólares ($30). Todo ello, claro está, manteniéndose la diferenciación en sueldo de acuerdo con los distintos tipos.

El caso de Doña Aquilina Díaz Reyes es vivo ejemplo de ello. Al 30 de septiembre de 1983 esta empleada recibía un sueldo de cuatrocientos noventa y tres dólares ($493) correspondiente al sexto (6to) tipo de la escala Núm. 4 de Oficinista Dactilógrafa II. El 16 de octubre de 1983 fue ascendida a Oficinista Dactilógrafa III en la escala Núm. 6, tipo quinto (5to), con un sueldo de quinientos cinco dólares ($505), esto es, doce dólares ($12) de aumento. Esto fue bajo la escala suplantada.

Cuando entró en vigor la nueva estructura, los sueldos correspondientes a la escala Núm. 6 del servicio de carrera fluctuaban entre cuatrocientos noventa y nueve dólares ($499) y seiscientos setenta y cuatro dólares ($674). Véase el Art. 6(a) de la Ley Núm. 84, *supra*, 3 L.P.R.A. sec. 760e(a). Al entrar en vigor la citada Ley Núm. 84, O.C.A.P. ajustó el sueldo de la señora Díaz exactamente al quinto (5to) tipo de la escala Núm. 6 para otorgarle un sueldo de seiscientos dos dólares ($602), es decir, un aumento de noventa y siete dólares ($97) con relación a su sueldo en la escala suplantada. *Cf.* Art. 6(a) de la Ley Núm. 84, *supra*.

Nótese que al realizar el ajuste, el tipo retributivo en la nueva estructura salarial coincide con el de la escala suplantada; sin embargo, representa un aumento mayor a los treinta dólares ($30) y reconoce el aumento de doce dólares ($12) recibido bajo la escala suplantada.

Sin embargo, J.A.S.A.P. sostiene que la norma de O.C.A.P. de ajustar el sueldo "exactamente al mismo tipo retributivo (pasos) de la nueva escala con el que coincidía en la suplantada", en los casos como el de la señora Díaz,[3] tiene el efecto de crear "una dicotomía y tratamiento diferenciado que creó una clasificación irracional y negó el principio de igual paga por igual trabajo, pues al azar, otorgó a ciertos empleados públicos menos de lo que pretendió el legislador y a otros más que lo autorizado en ley".

Entiende J.A.S.A.P. que "se crea, injustificadamente una situación de privilegio en la cual solo quedaron beneficiados y ello, indebidamente, aquel pequeño grupo de empleados públicos que, al 31 de marzo de 1984, *percibían sueldos superiores al nuevo tipo mínimo*. Por el contrario, todos los demás empleados públicos que a esa fecha no percibían una retribución superior al nuevo tipo mínimo, verán perdida, incluso, la posición relativa hasta entonces alcanzada".

*En síntesis y en términos generales, la fórmula propuesta por J.A.S.A.P. dispone que todos los empleados tenían derecho a que se le sumara la diferencia entre el sueldo que percibían bajo la estructura salarial anterior y el mínimo de la escala a la cual pertenecía su puesto dentro de la nueva estructura.* Si luego de sumada esta diferencia el resultado no coincidía con uno de los tipos retributivos de la nueva escala, entonces el sueldo debía ajustarse al tipo retributivo superior, siguiendo lo dispuesto por el Art.

---

[3] El caso de la Sra. Olga M. Velázquez no presenta este problema. El sueldo de la señora Velázquez tanto bajo la fórmula de O.C.A.P. como bajo la utilizada por J.A.S.A.P. era el mismo: seiscientos veinticuatro dólares ($624).

6(c)(7) de la Ley Núm. 84, *supra*, 3 L.P.R.A. sec. 760e(c)(7). De acuerdo con esta fórmula, el sueldo que correspondía a la señora Díaz al 1ro de abril de 1984 debía ser de quinientos ochenta dólares ($580).

Según J.A.S.A.P., no se podía ajustar el sueldo en la nueva escala exactamente al mismo tipo retributivo de la escala suplantada, sino al tipo inmediato superior dentro de la nueva escala a la cual estaba asignada la clase a que pertenecía el puesto luego de haberle adicionado la diferencia entre el nuevo y el anterior mínimo de dicha escala.

Erró al así resolver. Veamos.

## VIII

En primer lugar, surge de los autos que las aquí peticionarias Velázquez y Díaz Reyes sometieron ante J.A.S.A.P. dos (2) controversias básicas:

1. Si la bonificación de treinta dólares ($30) concedida por la citada Ley Núm. 83 formaba parte de sus salarios.

2. La procedencia del cobro reclamado por la autoridad nominadora sobre el exceso de los sueldos previamente pagados, por entender que se había incluido erróneamente los treinta dólares ($30) en el sueldo regular de las empleadas.

La controversia presentada ante J.A.S.A.P., por ende, *no planteaba reclamación alguna* sobre la norma establecida por O.C.A.P. en su Carta Normativa Especial Núm. 2-83 relativa al ajuste de los sueldos de los empleados públicos que habían recibido aumentos bajo la escala suplantada al entrar en vigor las nuevas escalas retributivas.

*J.A.S.A.P. resolvió la controversia sosteniendo la posición argumentada por O.C.A.P., sin embargo, entró a considerar una controversia que las partes no le habían planteado y dejó sin efecto la fórmula de fijación de salarios establecida por O.C.A.P. en su carta normativa.*

Con su acción J.A.S.A.P. sustituyó la norma establecida por O.C.A.P. y ordenó la fijación de nuevos salarios sin que ello se le hubiera planteado y, más aún, sin brindarle a las partes la oportunidad de presentar prueba sobre el particular, ello en violación del Art. 2.15(a) del reglamento de la propia J.A.S.A.P.

▮ Toda vez que J.A.S.A.P. es un tribunal administrativo apelativo, le correspondía actuar únicamente dentro del contexto del caso y de la controversia en particular, así como determinar el remedio apropiado a concederse. *López Vives v. Policía de P.R.*, supra.

▮ Ahora bien, aun cuando reconociéramos la facultad de J.A.S.A.P. para revisar cuasi judicialmente las normas sobre retribución dictadas por O.C.A.P. en este caso, *concluimos que J.A.S.A.P. se extralimitó en dicha función.*

▮ Para que J.A.S.A.P. pudiera variar la normativa de O.C.A.P. sobre la implantación del Art. 6(c)(10) de la Ley Núm. 84, *supra*, tendría que surgir que lo dispuesto al respecto en la Carta Normativa Especial Núm. 2-83 es irracional, caprichoso o arbitrario. Sin embargo, los fundamentos utilizados por J.A.S.A.P. para alterar dicha carta normativa no indican claramente en qué consiste la irracionalidad, la arbitrariedad o el capricho de lo allí dispuesto. Nosotros tampoco hemos identificado esos resultados en la aplicación de tal normativa. Al contrario, nos parece que lo dispuesto en los incisos (B)(2)–(B)(6) de la citada carta normativa cumple con lo dispuesto en el texto claro de la ley y lo reflejado en su propósito.

▮ La interpretación de J.A.S.A.P. intenta alcanzar la uniformidad, equidad y justicia retributiva, aplicando una fórmula de ajuste *que tiene como resultado crear unas nuevas escalas retributivas paralelas a las dispuestas en la ley*. Sólo se trata de que J.A.S.A.P. considera más justo que todos los empleados que se encuentran en una misma es-

cala salarial reciban el equivalente monetario de la cuantía en que se incrementó el tipo mínimo de dicha escala. Esta norma, sin embargo, conflige con el texto claro del Art. 6(c)(1) de la Ley Núm. 84, *supra*, 3 L.P.R.A. sec. 760e(c)(1), en el sentido de que para equiparar a los empleados que bajo la escala suplantada estaban por debajo del mínimo, el ajuste correspondiente sería llevar su sueldo al nuevo tipo mínimo. Ello se haría independientemente de cuál era la diferencia entre el sueldo anterior del empleado y el tipo mínimo de la escala dentro de la nueva estructura salarial.

■ Con relación a los tipos intermedios, nos parece racional el criterio utilizado por O.C.A.P. para hacer el ajuste, a saber, colocar el salario del empleado en el tipo y escala que coincidiera con el de la estructura suplantada. Ese es un criterio objetivo que en nada conflige con el propósito legislativo fundamental de la nueva Ley de Retribución Uniforme de establecer un sistema retributivo equitativo, uniforme y justo en la fijación de los sueldos de los empleados públicos cubiertos.

■ La diferencia en sueldo entre los diversos tipos en una escala es producto de la diferenciación racional que hace el legislador al considerar factores como los años de servicio que debe prestar el empleado para ubicarse en determinado tipo; la demanda y oferta en el mercado de trabajo; las habilidades y destrezas necesarias para realizar el trabajo, y el grado de complejidad de la tarea, entre otros. No es el capricho o la arbitrariedad lo que demarca los límites. Mucho menos en el nuevo plan integral de retribución uniforme que se aprobó e implantó mediante la Ley Núm. 84, *supra*, y la Carta Normativa Especial Núm. 2-83, respectivamente. La nueva ley ofrece un trato distinto a los empleados que se encontraban en situaciones distintas (tipos) en la estructura retributiva suplantada. Aquellos que se encontraban en una posición en que deven-

gaban un salario menor al nuevo tipo mínimo pasarían a dicho tipo. Si se encontraban en uno de los tipos o por razón de un aumento habían pasado de un tipo a otro, bajo la vieja estructura se les reconocía tal aumento ajustando su salario en la nueva, exactamente al mismo tipo retributivo ocupado en la estructura suplantada —con el aumento en sueldo inherente que ello conllevba— pues las nuevas escalas y sus tipos representaban otro aumento de sueldo de no menos de treinta dólares ($30).

Esta norma de ajuste adoptada por O.C.A.P. no es hija de la irreflexión. La misma fue producto de las recomendaciones de los peritos de retribución que colabo- raron en el estudio que sirvió de fundamento para la suplantación de las anteriores estructuras salariales del sector público. Véase el Estudio de Retribución para los Servicios de Carrera y de Confianza de 17 de mayo de 1982, preparado por los consultores en gerencia Clapp & Mayne, Inc. Esas diferencias establecidas por el legislador son justificadas. *Zachry International v. Tribunal Superior*, 104 D.P.R. 267 (1975).

Por otro lado, la fórmula propuesta por J.A.S.A.P. genera unos efectos, no previstos por el legislador, que están en franco desafío de los propósitos legislativos que inspiraron la reforma retributiva.

La aplicación de la fórmula adoptada por J.A.S.A.P. acarrea que unos empleados se beneficien, que otros se perjudiquen y que otros permanezcan en igualdad de condiciones. Según surge de los autos de los casos resueltos por J.A.S.A.P. sobre el ajuste salarial, al utilizar dicha fórmula en seis (6) de ellos el sueldo del empleado permanece igual con cualquiera de las dos (2) fórmulas; en cuarenta y siete (47) se reduce el salario, y en diez (10) el salario del empleado aumenta. ¿Dónde está la uniformidad, la justicia y la equidad deseada por el legislador?

*En conclusión, la decisión de J.A.S.A.P. se extrali-*

*mitó del ámbito de las controversias que le fueron someti-das sin darle oportunidad a las partes* de presentar prueba sobre cómo debería realizarse el ajuste salarial de las recurrentes Velázquez y Díaz Reyes al entrar en vigor la Ley de Retribución Uniforme el 1ro de abril de 1984, y *se extra-limitó del ámbito de sus facultades cuasi judiciales a nivel apelativo al dejar sin efecto la reglamentación adoptada por O.C.A.P. sin que existiera fundamento para ello.*

La fórmula adoptada por O.C.A.P. no viola el principio constitucional de igual paga por igual trabajo. Art. II, Sec. 16, Const. E.L.A., L.P.R.A., Tomo 1. Esta protección no impide un salario distinto a dos (2) personas que realicen una misma labor. Dentro de una clase —3 L.P.R.A. sec. 760j(7)— existen puestos distintos —3 L.P.R.A. sec. 760j(8)— ocupados por personas que han prestado distintos años de servicio, que tienen distintas cualidades y que merecen retribuirse de distinta manera. La Ley Núm. 84, *supra*, no niega esa realidad. Para ello crea distintas escalas y distintos tipos dentro de las escalas para dar a cada cual lo que cada cual merece y ha ganado. Esos factores diferenciadores permiten que la autoridad nominadora establezca, dentro de las clases, una clasificación justificada ante la labor rendida. La cláusula constitucional de igual paga por igual trabajo también lo permite. Véase el Informe de la Comisión de la Carta de Derechos de la Convención Constituyente presentado el 14 de diciembre de 1951 (4 Diario de Sesiones de la Convención Constituyente 2574 (1951)); *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991).

Por otro lado, nuestra Constitución sólo exige que la ley dé igual trato a los que están situados en igual posición. La Sec. 7 del Art. II de nuestra Constitución prohíbe que se le niegue "a persona alguna en Puerto Rico la igual protección de las leyes" (L.P.R.A., Tomo 1, ed. 1982, pág. 275). *Cf.* Emda. XIV, Sec. 1, Const. EE.UU., L.P.R.A., Tomo 1. A pesar de esto, hemos establecido que tal prohi-

bición se da contra el trato desigual injustificado —*Zachry International v. Tribunal Superior*, supra, pág. 277— y no implica la exclusión de toda diferenciación entre las personas si tal diferenciación tiene una justificación objetiva y permisible en el ámbito constitucional. *Almodóvar v. Méndez Román*, 125 D.P.R. 218 (1990); *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 D.P.R. 248 (1980); *Vélez v. Srio. Justicia*, 115 D.P.R. 533 (1984); *P.R.P. v. E.L.A.*, 115 D.P.R. 631 (1984); *Vda. de Miranda v. Srio. de Hacienda*, 114 D.P.R. 11 (1983); Tussman y Ten Broek, *The Equal Protection of the Laws*, 37 Cal. L. Rev. 341, 344–348 (1949).

 *Examinada la fórmula adoptada por O.C.A.P. resolvemos que la misma no es irracional, caprichosa o arbitraria, sino que se ajusta al texto y al espíritu de la Ley Núm. 84, supra.* Su aplicación no viola los principios constitucionales de igual paga por igual trabajo ni de igual protección de las leyes. *Cf. Mercado Vega v. U.P.R.*, supra.

 Ello no sucede así al aplicar la fórmula adoptada por J.A.S.A.P., la cual, en su implantación, se aparta de la ley y por fíat administrativo crea unas nuevas escalas retributivas bajo el fundamento de que, según dicha agencia, es la norma más justa. Esa no es su función según quedó delimitada en la Sec. 7.14 de la Ley de Personal, 3 L.P.R.A. sec. 1394.

Réstanos determinar si las recurrentes Velázquez y Díaz Reyes vienen obligadas a devolver lo recibido o a que la agencia le pague lo retenido luego de los correspondientes ajustes.

## IX

*Cobro de lo indebidamente pagado a la señora Velázquez y la señora Díaz*

¿Procede que las peticionarias devuelvan lo pagado indebidamente por Servicios Sociales a causa de un error de

derecho en el cómputo de sus salarios en el cual incurrió dicha agencia? Resolvemos que no procede tal reclamo.

■ Recientemente expresamos en *E.L.A. v. Asoc. Empleados Obras Púb. Mun.*, 126 D.P.R. 320, 333 (1990), que bajo la doctrina o el cuasi contrato de pago de lo indebido

... el que recibe alguna cosa que no tenía derecho a cobrar y que por *un error de hecho* ha sido indebidamente entregada, tiene la obligación de restituirle a quien la pagó. Art. 1795 del Código Civil, 31 L.P.R.A. sec. 5121; *Sucn. Choisne v. Municipio*, 100 D.P.R. 501 (1972); *A.C.A.A. v. Bird Piñero*, 115 D.P.R. 463 (1984); *Cartagena v. E.L.A.*, 116 D.P.R. 254 (1985).

Para que se configure este cuasicontrato es necesario *que se haya pagado* indebidamente y que dicho pago se haya hecho por error o equivocación y no por mera liberalidad. *Silva v. Sucn. Caratini*, 51 D.P.R. 778 (1937); *Sucesión Marín v. Municipio de Arecibo*, 28 D.P.R. 515 (1920); *American R.R. Co. of P.R. v. Wolkers*, 22 D.P.R. 283 (1915); *Arandes v. Báez*, 20 D.P.R. 388 (1914). (Énfasis suplido.)

■ Ante el error de derecho no procede la devolución de lo indebidamente *pagado*, aun cuando se trate de fondos públicos. *A.C.A.A. v. Bird Piñero*, supra, pág. 467.

Aquí las propias agencias apeladas reconocen que lo indebidamente pagado responde a *un error de derecho* al interpretar el alcance de las leyes de retribución en el caso específico de las empleadas peticionarias. En tales circunstancias no procede el cobro de lo pagado —*Cartagena v. E.L.A.*, 116 D.P.R. 254, 257 (1985)— puesto que en lo así pagado y en la fijación de su retribución nada tuvieron que ver las empleadas peticionarias.

■ Ahora bien, parte del reclamo de la agencia se refiere a las sumas descontadas de los salarios de las apelantes una vez corrigieron el error. En el caso de la peticionaria Velázquez, tales sumas fueron retenidas desde marzo de 1985, y en el caso de la copeticionaria Díaz desde junio de 1985. Como vimos, no procede el cobro de lo indebido cuando "se haya *pagado* indebidamente ...".

En esta situación *no se ha pagado nada, sino que se ha retenido la diferencia del sueldo luego de corregir el ale-*

*gado error.* No hubo una traslación y entrega de esos fondos al empleado. No procede, pues, lo ordenado por J.A.S.A.P. en cuanto al reembolso de tales fondos por parte de Servicios Sociales de dichas sumas descontadas del sueldo de las peticionarias.

Por los fundamentos expuestos, *se confirma la sentencia dictada por el foro de instancia en el recurso CE–86–183, Aulet Lebrón v. Depto. de Servicios Sociales, y se revoca la dictada en el recurso CE–87–361, Velázquez Rivera v. Departamento Servicios Sociales, se dicta sentencia que modifica la resolución de J.A.S.A.P, ordenándole que ajuste el sueldo de la señora Díaz Reyes de acuerdo con la Carta Normativa Especial Núm. 2-83 aprobada por O.C.A.P. y que se abstenga de ordenarle a Servicios Sociales que devuelva o reembolse las sumas descontadas por ésta, luego de los correspondientes ajustes al sueldo de las peticionarias. Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García concurre sin opinion escrita. El Juez Asociado Señor Hernández Denton no intervino.